1

2

3

4

5

6

7

8

9                        UNITED STATES DISTRICT COURT

10              FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12   CAROL QUIGLEY, aka CAROL DIANE          No.  2:13-cv-1766-KJM-EFB
     EUWEMA,
13
                    Plaintiff,
14                                           ORDER
          v.
15
     AMERICAN CLAIMS SERVICES, INC.,
16   JOHN BANNON, BILL T. JOHNSON,
     and SUSAN B. JOHNSON,
17
                    Defendants.
18

19

20       This case was before the court for hearing on defendants' motion for a protective order.

21   ECF No. 31.  Attorney Stephen Castronova appeared on behalf of plaintiff; attorneys Anthony

22   Modareli and Adrienne Cohen appeared on behalf of defendants.  Defendants' motion for a

23   protective order seeks to prevent responses to discovery concerning six distinct issues.

24   Specifically, defendants seek to prevent responses to the following requests: (1) Plaintiff's

25   Request for Production of Documents, Set One to American Claims Services ("ACSI"), No. 8; (2)

26   Plaintiff's Interrogatories, Set One to ACSI, Nos. 1 through 6; (3) Plaintiff's Interrogatories, Set

27   One to John Bannon, Bill Johnson, and Susan Johnson, Nos. 1 through 13, and Plaintiff's

28   Interrogatories, Set Two, Nos. 7 through 13; (4) Plaintiff's Request for Production of Documents,

                                            1

1  Set Five to ACSI, No. 19; (5) Plaintiff's Request for Production of Documents, Set Five to ACSI,

2  Nos. 20-25; (6) Plaintiff's Interrogatories, Set Two to John Bannon, Nos. 8 through 13.

3          For the reasons stated at the hearing, the court denied defendants' motion for a protective

4  order as to plaintiff's Request for Production of Documents, Set One, No. 8 and plaintiff's

5  Interrogatories, Set One, Nos. 1 through 6.  As for the remaining discovery requests, the parties

6  raised new arguments that were not briefed in their joint statement.  Accordingly, the court

7  directed the parties to file supplemental briefs, which have now been submitted.  *See* ECF Nos.

8  34, 35.

9          After considering the parties' joint statement, the oral arguments at the hearing, and the

10  parties' supplemental briefs, the court grants defendants' motion for a protective order as to

11  plaintiff's Interrogatories, Set One, Nos. 1 through 13, served on John Bannon, Bill Johnson, and

12  Susan Johnson; plaintiff's Interrogatories, Set Two, Nos. 7 through 13 served on ACSI; and

13  plaintiff's Interrogatories, Set Two Nos. 8 through 13 served on John Bannon.  The motion in all

14  other respects is denied.

15  I.      Standard

16          "The court may, for good cause, issue an order to protect a party or person from

17  annoyance, embarrassment, oppression, or undue burden or expense, including . . . (A) forbidding

18  the disclosure or discovery."  Fed. R. Civ. P. 26(c)(1).  Federal Rule of Civil Procedure 26(b)(1)

19  provides that the scope of discovery includes "any nonprivileged matter that is relevant to any

20  party's claim or defense."  Further, relevant information need not be admissible if the discovery

21  appears reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P.

22  26(b).  Relevant information encompasses "any matter that bears on, or that reasonably could lead

23  to other matter that could bear on, any issue that is or may be in the case."  *Ibanez v. Miller*, No.

24  CIV S-06-2668 JAM EFB P, 2009 WL 1706665, at *1 (E.D. Cal. Oct. 22, 2009) (quoting

25  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  Moreover, "[t]he question of

26  relevancy should be construed 'liberally and with common sense' and discovery should be

27  allowed unless the information sought has no conceivable bearing on the case."  *Id*. (quoting *Soto*

28  *v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995)).

1    Additionally, Rule 26(b)(2)(C) provides that "[o]n motion or on its own, the court must

2    limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it

3    determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be

4    obtained from some other source that is more convenient, less burdensome, or less expensive; (ii)

5    the party seeking discovery has had ample opportunity to obtain the information by discovery in

6    the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit,

7    considering the needs of the case, the amount in controversy, the parties' resources, the

8    importance of the issues at stake in the action, and the importance of the discovery in resolving

9    the issues."

10   II.   Discussion

11         A.   Plaintiff's Interrogatories, Set One, Nos. 1-13, served on John Bannon, Bill
                Johnson, and Susan Johnson and Plaintiff's Interrogatories, Set Two, Nos. 7-13,
12              served on ACSI.

13

14         Plaintiff's Interrogatories, Set One, Nos. 1 through 13, and Set Two, Nos. 7 through 13,

15   seeks to discover whether defendants paid to the California Franchise Tax Board income taxes on

16   income earned from ACSI's insurance adjusting business conducted in California during the

17   calendar years of 2006-2012.  Defendants object, arguing that whether they paid state taxes

18   during these years is not relevant to this case.  ECF No. 32 at 3.  Plaintiff argues that the

19   information is relevant to her unfair business practices claim pursuant to Bus. & Prof. Code

20   §§ 17200 *et seq*. ("the UCL") because it might show that defendant gained an unfair business

21   advantage by not paying their taxes.  However, plaintiff's complaint contains no allegations that

22   defendants gained unfair business advantage in violation of the UCL by not paying taxes.  ECF

23   No. 14 at 7-8.  Rather, plaintiff's claims all center on her core allegation that defendants

24   improperly used her name, license and signature to obtain a business advantage.

25         Plaintiff asserts in her second amended complaint that she is a licensed insurance adjuster,

26   that defendant ACSI is an insurance claims management company, that defendant John Bannon is

27   a manager at ACSI, that defendant Bill Johnson is the CEO of ACSI, and that defendant Susan

28   Johnson is the CFO of ACSI.  ECF No. 14 ¶¶ 1-5.  According to the complaint, ACSI and

3

1    Bannon began using plaintiff as an independent adjuster in May 2005.  *Id*. ¶ 9.  In February 2006,

2    Bannon advised plaintiff that ACSI needed to use her California adjuster's license for its

3    California claims operations.   *Id*. ¶ 10.  It is alleged that the parties agreed plaintiff would

4    become the manager for ACSI in California, and would manage its California claims operations,

5    and that ACSI would use plaintiff's name and insurance adjuster's license in order to operate an

6    insurance claims operation in California as required under California Insurance Code §§ 14000,

7    *et seq*.  *Id*. ¶ 11.  It is further alleged that ACSI represented to plaintiff, in writing, that she would

8    serve as ACSI's qualified manager and that plaintiff's name and license would be used for a short

9    period of time.  *Id*.  According to plaintiff, ACSI did not perform as promised and continued to

10   use her name, license, and signature from March 2006, until January 2013.  *Id*. ¶ 17.   Plaintiff

11   claims that the use of her name, license, and signature gave defendants an unfair business

12   advantage at plaintiff's expense.  *Id*. ¶ 28.

13          In short, plaintiff's claims are based solely on the use of her license and name and do not

14   concern whether defendants paid their state taxes.  Furthermore, as discussed at the hearing, it is

15   unclear how plaintiff would have standing to bring a claim under the UCL based on defendants'

16   failure to pay taxes.  California Business and Professions code section 17204 unambiguously

17   states that for a private person to have standing to prosecute a UCL violation she must have

18   "suffered injury in fact and . . . lost money or property as a result of the unfair competition."

19   Plaintiff conceded at the hearing that she is not in direct competition with defendants.  It is

20   therefore unclear how plaintiff would have lost money or property based on any failure by

21   defendants to pay their state taxes.

22          Lastly, plaintiff argues in her supplemental brief that the UCL authorizes disgorgement of

23   profits as a remedy for defendants' alleged unauthorized use of her name and license.  ECF No.

24   35 at 3-4.  She contends that her "ability to prove the amount of profits to be disgorged is

25   dependent upon obtaining defendants' financial records . . . ."  The argument fails to establish any

26   relevance of the tax information.  Her Interrogatories, Set One, Nos. 1 through 13, and Set Two,

27   Nos. 7 through 13, seeks only to discover whether defendants paid to the California Franchise

28   Tax Board income taxes on income earned from ACSI's insurance adjusting business conducted

                                            4

1    in California during the calendar years of 2006-2012.  They seek only a "yes" or "no" response.

2    They do not seek financial documents indicating what profits were realized by defendants.

3    Accordingly, these interrogatories are irrelevant and defendants' motion for a protective order as

4    to these interrogatories is granted.  Therefore, defendants' motion is granted as to plaintiff's

5    Interrogatories, Set One, Nos. 1 through 13 served on John Bannon, Bill Johnson, and Susan

6    Johnson.[1]

7              B.        Plaintiff's Request for Production of Documents, Set Five, No. 19

8              Plaintiff's request for Production of Documents, Set Five, No. 19, requests that ACSI

9    produce copies of its corporate tax returns filed with the State of California for the years of 2007

10   through 2012.  Unlike the state tax returns discussed above, ACSI's corporate tax returns are

11   relevant to plaintiff's claim for misappropriation.  Plaintiff seeks to recover all profits defendant

12   ACSI gained on account of using her license without her consent.  *See* Cal. Civ. Code § 3344(a)

13   (providing that damages for misappropriation of a person's name, signature, or likeness includes

14   "any profits from the unauthorized use that are attributable to the use and are not taken into

15   account in computing the actual damages.").  The Corporate tax returns likely contain information

16   needed to calculate any such profits.

17             ACSI argues that the tax returns are privileged under California law and therefore not

18   discoverable.  *Webb v. Standard Oil Co.*, 49 Cal.2d 509, 513 (1957).  In a federal action based on

19   diversity of citizenship, as in this case, state privilege law governs.  Fed. R. Evid. 501.  The

20   California Supreme Court has held that the California Revenue and Taxation Code implicitly

21   creates a privilege against the disclosure of income tax returns.  *Webb v. Standard Oil Co.*, 49

22   Cal.2d 509, 513 (1957).  The purpose of the tax return privilege is to promote full and honest

23   disclosure when filing taxes.  *Id*. at 513.

24   /////

25             [1] As explained herein, the court finds that plaintiff is entitled to ACSI's corporate tax
26   returns for the years of 2007 through 2012.  Plaintiff's Interrogatories, Set Two, Nos. 7 through
     13, simply asks whether ACSI paid taxes to the state of California during these calendar years,
27   with the exception of 2006.  ECF No. 32-2, Ex. 5.  As the tax returns cover the relevant time at
     issue, the court finds that ACSI need not provide a response to plaintiff's Interrogatories, Set
28   Two, Nos. 7 through 13

1          Plaintiff argues that defendants waived the privilege by intentionally relinquishing the tax

2     returns to a third party during an asset sale.  ECF No. 35 at 5-6.  Defendants admit that ACSI

3     provided York Risk Services Group ("York") its tax returns as a part of a confidential asset

4     purchase agreement.  ECF No. 34 at 5.  They argue, however, that disclosing the tax returns to

5     York in connection with the asset sale did not constitute a waiver.

6          The burden is on the party asserting the privilege to prove the underlying facts that a

7     privilege exits.  *See Seahus La Jolla Owners Association v. Superior Court*, 224 Cal.App.4th 754.

8     Once proven, the burden shifts to the party opposing the privilege to show either the claimed

9     privilege does not apply, an exception exists, or there has been an express or implied waiver.  *See*

10    *Venture Law Group v. Superior Court*, 118 Cal.App.4th 96 (2004).  "[The tax return] privilege is

11    waived or does not apply in three situations: (1) there is an intentional relinquishment, (2) the

12    gravamen of [the] lawsuit is so inconsistent with the continued assertion for the taxpayer's

13    privilege as to compel a conclusion that the privilege has in fact been waived, or (3) a public

14    policy greater than that of confidentiality of tax returns is involved."  *Schnabel v. Superior Court*,

15    5 Cal.4th, 704, 721 (internal quotations and citations omitted).  The waiver of a privilege "must

16    be narrowly rather than expansively construed," in order to protect the privilege.  *Fortunato*, 114

17    Cal.App.4th 475, 482 (2nd Dist. 2003) (citing *Britt v. Superior Court*, 20 Cal.3d at 859.)

18         Defendants rely on *Fortunato* for their argument that the disclosure of ACSI's corporate

19    tax returns in the course of the asset sale does not constitute an intentional relinquishment.  In

20    *Fortunato*, a proponent of a will in a probate dispute provided his tax returns to a bank as a part of

21    a loan application.  114 Cal.App.4th at 487.  The will's contestant sought the tax returns directly

22    from the bank.  *Id*.  The proponent moved for a protective order claiming that the returns were

23    privileged.  *Id*.  The probate court denied the motion.  *Id*. at 478-479.  On appeal, the California

24    Court of Appeal, Second Appellate District, held that providing tax returns to a bank as part of a

25    loan application does not effect a waiver of the tax return privilege.  *Id*. at 482.

26         The court reasoned that the purpose of the privilege does not support a waiver when tax

27    returns are relinquished as part of a loan application.  *Fortunato*, 114 Cal.App.4th at 482.  The

28    court provided two connected reasons for why the purpose of the privilege does not support a

1    waiver under such circumstances.  *Id*.  First, a bank customer reasonably expects the bank to

2    maintain the confidentiality of their tax returns.  *Id* at 480; *see also Burrows v Superior Court*, 13

3    Cal.3d 238, 243 (1974).  The constitutional right to privacy creates a "reasonable belief" that tax

4    returns provided to a bank will remain confidential.  *Id*. at 480.  The court recognized that the will

5    proponent did not assert his privacy right as a part of his motion for a protective order and

6    therefore did not review the issue specifically in that case.  But, the court concluded that "the

7    constitutional right of privacy in financial documents in a bank's possession has bearing upon the

8    question of whether the tax-return privilege was waived in this case."  *Id*. at 482.  Accordingly,

9    the court held that the privilege was not waived, in part, because the tax returns were provided to

10   a third party that the will proponent had a "reasonable belief" would keep them confidential.  *See*

11   *id*. at 480-481.

12        The court also found that providing a bank with tax returns as part of a loan application is

13   not entirely voluntary.  *Fortunato*, 114 Cal.App.4th at 481.  "[T]he disclosure by individuals or

14   business firms of their financial affairs to a bank is not entirely volitional, since it is impossible to

15   participate in the economic life of contemporary society without maintaining a bank account."  *Id*.

16   The court observed that bank customers are regularly required to transmit their tax returns to

17   banks in order to obtain a loan, "a necessary aspect of economic life," but they do so with the

18   confidence that those returns will remain confidential.  *Id*. at 480-482.  The court observed that

19   this creates a reality where banks regularly have their customers' tax returns.  It reasoned that if a

20   litigant was able to obtain the tax returns of every opponent who had provided their bank with a

21   tax return, the purpose of the privilege would be defeated.  Taxpayers would no longer have

22   confidence that their returns would remain confidential if litigation arose; their opponents would

23   be able to obtain their tax returns despite the privilege because they were forced to waive the

24   privilege by providing their returns to a bank.  *Id*.  Essentially, finding a waiver under such

25   circumstances would swallow the privilege.

26        Defendants argue that the holding in *Fortunato* should be extended to the circumstance

27   presented here.  ECF No. 34 at 5.  They argue that the practice of providing tax returns to

28   potential purchasing companies is analogous to providing tax returns to a bank for purposes of a

1   loan.  They argue that the agreement was confidential and was consistent with a regular business

2   practice in the industry of companies providing tax returns to purchasing companies as a part of

3   an asset sale.  ECF No. 34 at 5-6.  The question, however, is not whether the disclosure was

4   pursuant to a regular business practice.  As explained in *Fortunato*, for the relinquishment of a tax

5   return to not be a waiver, the party claiming the privilege must have had both (1) a "reasonable

6   belief" that the information would be kept confidential,[2] and (2) the relinquishment must not have

7   been "entirely voluntary."  *See Fortunato*, 114 Cal.App.4th at 481-482.

8   ACSI argues that it had a reasonable belief that the tax returns would remain confidential.

9   ECF No. 34 at 5-6.  ACSI explains that it entered into a confidential agreement with York as part

10  of an asset sale before providing them the tax returns, ECF No. 34 at 1-2, and argues that the

11  agreement gave ACSI confidence that the information they provided to York, including the tax

12  returns, would remain confidential.  ACSI argues that its "reasonable belief" that the tax returns

13  would remain confidential is akin to that of a bank customer who believes their financial

14  information will remain confidential.  ACSI also argues that participation in an asset sale is an

15  economic reality for businesses the same way participating in the banking system is an economic

16  fact of life.  ECF No. 34 at 5-6.

17  While it does appear that ACSI had a reasonable expectation that York would keep its tax

18  returns confidential, the court is not convinced that disclosure was involuntary.  There is little

19  reason to doubt that participating in asset sales is a common act for a business, but such

20  participation is voluntary—it is not fundamental to economically functioning as a business.  A

21  business can still be profitable and still survive without participating in take overs.  While it may

22  often be an easy choice for a business to participate in a purchase agreement given the significant

23  profits they may receive, it is still a choice.  Participating in the banking system is not a "choice"

24  in the same sense.  A business or individual has to participate in the credit system in order to

25  _____

    [2] It is clear that under California law an expectation that information will remain

26  confidential is not alone sufficient to retain a privilege.  *See McKesson HBOC, Inc. v. Superior
    Court*, 115 Cal.App.4th, 1229 (Reciting attorney client communication to federal government as

27  part of confidential agreement in criminal investigation effected a waiver of the privilege).
    However, the reasonable belief of confidentiality is only an aspect of the analysis, more is

28  required for a waiver not to have been effectuated.  *Fortuanto*, 114 Cal.App.4th at 481-482.

1    realize the basic benefits of modern life. (e.g. owning a home, purchasing a car, capitalizing a

2    business, meeting payroll, funding an education.)  Businesses may participate in asset sales to

3    obtain healthier profits, but this is not the only means for generating profits.

4         Furthermore, negotiations with a bank are not at arm's length in the sense of parties

5    negotiating over the sale of assets.  Individuals attempting to obtain a loan must comply with the

6    banks requirements, including providing tax returns.  ACSI, however, could have arranged for an

7    alternative to delivering their tax returns to York if they wanted to protect their privilege.  The

8    same is not true for a home loan applicant.  Although ASCI had what it viewed as strong business

9    reasons to do so, it voluntarily relinquished its tax returns and thereby waived their privilege

10   status.  Therefore, defendants' motion for a protective order as to plaintiff's Request for

11   Production of Documents, Set Five, No. 19, is denied.

12        C.      Plaintiff's Request for Production of Documents, Set Five, No. 20-25

13        Plaintiff's Request for Production of Documents, Set Five, Nos. 20 through 25, request

14   copies of documents relied on by defendants to calculate gross revenue for the calendar years of

15   2007-2012 generated by their California claims operations.  Defendants argue that plaintiff's

16   attempt to discover defendants' financial information is based solely on California Civil Code

17   section 3344, which does not apply in this case.  ECF No. 34 at 1.  Defendants contend that

18   section 3344 only applies to commercial misappropriation.  *Id*. at 1-2.  However, plaintiff's fifth

19   cause of action is for misappropriation and specifically seeks damages pursuant to California

20   Civil Code Section 3344, ECF No. 14 at 11-12, which provides that damages for

21   misappropriation of a person's name, signature, or likeness include "any profits from the

22   unauthorized use that are attributable to the use and are not taken into account in computing the

23   actual damages."  Cal. Civ. Code § 3344(a).  Thus, the complaint specifically pleads a violation

24   of section 3344. [3]

25   /////

26

27        [3] While defendants suggest a problem with the sufficiency of the allegations in the
     complaint as to this claim, such a concern is appropriately addressed in a Rule 12(b)(6) motion,
28   not an objection to plaintiff's discovery requests.

1    As the complaint alleges that plaintiff is entitled to damages pursuant to section 3344,

2    plaintiff is entitled to documents relied on by defendants to calculate gross revenue for the

3    calendar years of 2007-2012 generated by their California claims operations.  Accordingly,

4    defendants' motion for a protective order as to plaintiff's Request for Production of Documents,

5    Set Five, Nos. 20 through 25 is denied.

6         D.    Plaintiff's Interrogatories, Set Two, Nos. 8-13

7    Plaintiff's Interrogatory, Set Two, Nos. 8-13, requests defendant John Bannon to provide

8    the amount of gross revenue that he realized for the calendar years of 2007-2012.  Defendant

9    Bannon argues that his gross salary is not relevant to the instant dispute.  There are no allegations

10   in the complaint that Bannon used plaintiff's license independently of ACSI's use.  Furthermore,

11   defendant Bannon has provided a declaration that he was a salary employee with ACSI.

12   Accordingly, there is no indication that Bannon personally realized any profit by ACSI's use of

13   plaintiff's name and license.  Therefore, Bannon's gross revenue is not relevant to the instant

14   dispute.  Accordingly, defendants' motion for a protective order as to plaintiff's Interrogatories,

15   Set Two, Nos. 8-13 is granted.

16   III.   Conclusion

17        Accordingly, IT IS HEREBY ORDERED that defendant's motion for a protective order

18   (ECF No. 31) is granted in part and denied in part as follows:

19      1.  The motion is denied as to plaintiff's Request for Production of Documents, Set One, No.

20          8; plaintiff's Interrogatories, Set One, Nos. 1 through 6; plaintiff's Request for production

21          of Documents, Set Five, No. 19; and plaintiff's Request for Production of Documents, Set

22          Five, Nos. 20-25 is denied.  Defendants shall file and serve responses to these discovery

23          requests within 7 days of the date of this order.

24   /////

25   /////

26   /////

27   /////

28   /////

10

1      2.  The motion is granted as to plaintiff's Interrogatories, Set One, Nos. 1 through 13 served

2          on defendants John Bannon, Bill Johnson, and Susan Johnson; and plaintiff's

3          Interrogatories, Set Two, Nos. 8-13 served on defendant Bannon.

4   DATED:  November 5, 2014.ECF

5

6                                            EDMUND F. BRENNAN
                                             UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              11