UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL QUIGLEY, aka CAROL DIANE EUWEMA,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN CLAIMS SERVICES, INC., JOHN BANNON, BILL T. JOHNSON, SUSAN B. JOHNSON, and DOES 1 through 50, inclusive,[1]<br><br>Defendants. | No.: 2:13-cv-01766-KJM-EFB<br><br>ORDER |

This matter is before the court on the motion by plaintiff Carol Quigley ("plaintiff") for partial summary judgment. (Pl.'s Mot. Summ. J., ECF No. 38.) Defendants

---

[1] The Ninth Circuit provides that "'[plaintiffs] should be given an opportunity through discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the alleged defendant[] [is] not [] known prior to the filing of a complaint.'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)) (modifications in the original). Plaintiff is warned, however, that such defendants will be dismissed before trial where "'it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *Id.* (quoting *Gillespie*, 629 F.2d at 642). Plaintiff is further warned that Federal Rule of Civil Procedure 4(m), which states that the court must dismiss defendants who have not been served within 120 days after the filing of the complaint unless plaintiff shows good cause, is applicable to doe defendants. *See Glass v. Fields*, No. 1:09-cv-00098-OWW-SMS PC, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive Prods. v. Does*, No. C 11-01567 LB, 2011 U.S. Dist. LEXIS 109837, at *2–4 (N.D. Cal. Sep. 27, 2011).

1

American Claims Services, Inc. ("ACS") and John Bannon ("Bannon") (collectively "defendants") oppose the motion. (Defs.' Opp'n, ECF No. 39.) The court held a hearing on the matter on August 29, 2014, at which Stephen Castronova appeared for plaintiff and Adrienne Cohen along with Veronika Zappelli appeared for defendants. As explained below, the court DENIES plaintiff's motion.

I.   UNDISPUTED FACTS

The claims in this case arise out of defendants' alleged unauthorized use of plaintiff's insurance adjuster license. Plaintiff is a California licensed insurance adjuster. (ECF No. 13 at 2.) ACS is an insurance claims management company that engaged in the business of adjusting insurance liability claims in California from March 2006 to January 2013. (ECF No. 39-1 ¶ 1.) Bannon is ACS's president. (*Id.* ¶ 2; Ex. 1; Bannon Dep. 9:16–10:2, ECF No. 38-5.)

In February 2006, defendants sent a letter to plaintiff requesting that she become defendants' qualified manager in California by completing a form with the California Department of Insurance ("DOI"). (ECF No. 39-1 ¶ 4.) ACS made that request because it could not conduct business in California without an organization insurance adjuster license; ACS could obtain an organization insurance adjuster license if it retained a licensed qualified manager in California. (*See id.* ¶ 9; *see also* ECF No. 39-5 at 81.) In the same letter, Bannon stated he would "make every effort to substitute [himself] for [plaintiff] ASAP." (Ex. 4, ECF No. 38-2.) In return for the use of plaintiff's name and license, ACS agreed to send contract work to plaintiff. (ECF No. 43 ¶ 3.)

Plaintiff agreed and filled out a form with the DOI, thus becoming ACS's qualified manager. (Ex. 5, ECF No. 38-2.) Consequently, the DOI issued a license to ACS, with an effective date of March 2006. (Ex. 6, ECF No. 38-2.) That license included plaintiff's name as a qualified manager. (*Id.*) At the time of the renewal of ACS's license in July 2008, plaintiff was again named as the designated qualified manager for ACS. (Ex. 8, ECF No. 38-2.) According to DOI, plaintiff "remained continuously designated as the qualified manager until January 31, 2013, when she was terminated from that organization license." (*Id.*) However, for the 2010 and 2012 renewals, defendants did not include plaintiff's name as the qualified manager on the

2

renewal applications; rather, the applications identified Bannon as ACS's qualified manager. (*See* Exs. 9 & 10, ECF No. 38-2.) Plaintiff alleges she did not allow ACS to use her name and license for such a long time and that she first learned about ACS's alleged unauthorized use on January 8, 2013. (*See* ECF No. 38-1 at 3.) At that time, plaintiff sent a letter to Bannon, noting she had learned about ACS's use and that the use had exceeded her initial authorization's scope. (Ex. 11, ECF No. 38-2.) In February 2013, Bannon officially became ACS's qualified manager. (Ex. 1 at 25, ECF No. 38-5.)

On January 31, 2014, plaintiff filed a second amended complaint, alleging four claims: (1) misrepresentation and fraud; (2) unfair competition and trade practices; (3) conversion; and (4) misappropriation of name, identity, likeness, and signature. (*See generally* ECF No. 14.) Plaintiff now moves for partial summary judgment on her misappropriation claim, seeking to establish the liability aspect of that claim as a matter of law. (ECF No. 38 at 1.) Defendants oppose the motion. (ECF No. 39.)

II.     SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), a "party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). A partial summary judgment may be granted on motion of either party for adjudication of a particular claim. *Id.* For example, a party may move for summary judgment on the issue of liability, leaving the issue of damages for trial. *Wang Labs., Inc. v. Mitsubishi Electronics Am., Inc.*, 860 F. Supp. 1448, 1450 (C.D. Cal. 1993). The standards and procedures are the same as for summary judgment. *Id.* at 1451.

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[2]

---

[2] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting

1  The moving party bears the initial burden of showing the district court "that there
2  is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*,
3  477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish
4  that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio*
5  *Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular
6  parts of materials in the record . . .; or show [] that the materials cited do not establish the absence
7  or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to
8  support the fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the
9  nonmoving party] must do more than simply show that there is some metaphysical doubt as to the
10 material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact
11 . . . . Only disputes over facts that might affect the outcome of the suit under the governing law
12 will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48
13 (emphasis in original).

14  In deciding a motion for summary judgment, the court draws all inferences and
15 views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at
16 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a
17 whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine
18 issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv.*
19 *Co.*, 391 U.S. 253, 289 (1968)).

20  A court may consider evidence as long as it is "admissible at trial." *Fraser v.*
21 *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the
22 evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001)
23 (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the
24 burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir.
25 2002). If the opposing party objects to the proposed evidence, the party seeking admission must
26 direct the district court to "authenticating documents, deposition testimony bearing on attribution,

27 ───────────────────
28 summary judgment remains unchanged." FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 amendments.

hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010). However, courts are sometimes "much more lenient" with the affidavits and documents of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).

III.   DISCUSSION

Plaintiff moves for partial summary judgment on her misappropriation claim, which is based on both common and statutory law. (*See* ECF No. 38-1 at 1.) Plaintiff argues she is entitled to partial summary judgment on her misappropriation claim because the undisputed facts conclusively establish all of the elements for both bases. (*Id.* at 7.) Specifically, plaintiff reasons as follows:

> In March 2006[,] defendants submitted plaintiff's name, signature and photographic likeness to [the DOI] . . . . Upon submission of plaintiff's name, signature, and likeness, [the DOI] issued a California organization adjuster's license to ACS[] which has plaintiff's name on it . . . .
>
> Defendants used plaintiff's name as ACS[']s [q]ualified [m]anager continuously from March 2006 through January 31, 2013 . . . . Use of plaintiff's name, signature and likeness was without plaintiff's permission or consent after June 2006 . . . . Defendants' use of plaintiff's name, signature and likeness was knowingly done . . . and such use was to defendants' advantage and for commercial purposes . . . .

(*Id.*)

Defendants respond ACS's use of plaintiff's name was for an administrative purpose, not for publicity, and, therefore, plaintiff is not entitled to summary judgment. (ECF No. 39 at 9–10.) Defendants also counter there is a genuine dispute of material fact as to whether defendants' use of plaintiff's name was without plaintiff's consent and knowing. (ECF No. 39 at 5.)

California recognizes a person's right to protect his or her name and likeness from appropriation by others. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). In doing so, California provides two avenues for asserting that right: (a) a common law claim and

(b) a statutory remedy under California Civil Code section 3344. *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 803 (N.D. Cal. 2011).

### a. Common Law Claim

Under California law, to state a claim for common law commercial misappropriation of privacy, a plaintiff must prove: "[(1)] the defendant's use of plaintiff's identity[;] [(2)] the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise[;] [(3)] a lack of consent[;] and [(4)] resulting injury." *Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1088 (9th Cir. 2002).

Here, the court finds there is a genuine dispute of fact as to the consent element. Thus, the court cannot grant summary judgment in plaintiffs' favor on her common law misappropriation claim.

While consent to use a name or likeness can be express or in writing, it may also be implied from a consenting party's conduct and the unique circumstances of a case. *See Newton v. Thomason*, 22 F.3d 1455, 1461 (9th Cir. 1994) (granting summary judgment in favor of the defendant in right of publicity suit because the plaintiff, among other things, did not object to the use of his likeness over several months); *Hill v. Nat'l Collegiate Athletic Ass'n.*, 7 Cal. 4th 1, 26 (1994) ("[T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant."). A "[p]laintiff's subjective beliefs as to her consent are not determinative; consent is measured from [p]laintiff's manifested action or inaction." *Jones v. Corbis Corp.*, 815 F. Supp. 2d 1108, 1113 (C.D. Cal. 2011).

Here, on the one hand, there is evidence from which a reasonable jury could find plaintiff's consent was intended to be for a brief period. Particularly, in a letter dated February 28, 2006, Bannon assured plaintiff he would "make every effort to substitute [himself] for [her] ASAP." (Ex. 4, ECF No. 38-2.) Bannon believed that period to be "a reasonable time period" (Bannon Dep. 29:16–24, ECF No. 38-5), and he defined that period as "[s]everal months." (*Id.*) When asked to confirm that plaintiff's consent was intended for "a couple of months," Bannon

1  again confirmed: "Yes, a couple of months." (*Id.* 30:9–12, 110:22–111:2.) Bannon stated that
2  no one "intended for this to go on for as long as it did." (*Id.* 111:9–11.) Bannon took no action to
3  substitute himself from 2006 to 2013 because he "completely forgot about [it]." (*Id.* 20:11–13.)
4  　　　　On the other hand, there are facts from which a reasonable jury could determine
5  plaintiff consented to ACS's use of her license so long as plaintiff received continued business
6  from ACS. There is evidence to show plaintiff was to receive business from ACS in exchange for
7  using plaintiff's license; it was a "great business opportunity and relationship." (Quigley Dep.
8  39:5–11, ECF No. 39-6.) In addition, plaintiff's inaction, in not taking any steps to determine
9  whether ACS was using her name from 2006 to 2013, may further indicate consent. (*Id.* 77:4–
10 25.) It is a jury's province to decide whether plaintiff's belief "that [Bannon] was a man of his
11 word" (*id.* 77:24), was objectively reasonable under the circumstances of this case.
12 　　　　The court DENIES plaintiff's motion as to her common law misappropriation
13 claim.
14 　　　　b.   Section 3344
15 　　　　In addition to the common law claim, California provides a statutory remedy under
16 California Civil Code section 3344, and the remedies section 3344 provides complement the
17 common law claim without replacing or codifying it. *Downing*, 265 F.3d at 1001. Section 3344
18 provides in relevant part, "[a]ny person who knowingly uses another's name, . . . , signature,
19 photograph, or likeness, in any manner . . . for purposes of . . . selling, or soliciting purchases of .
20 . . services[] without such person's prior consent . . . shall be liable for any damages sustained by
21 the person . . . ." CAL. CIV. CODE § 3344(a). Under section 3344, a plaintiff must prove all of the
22 elements of a common law claim. *Downing*, 265 F.3d at 1001. Additionally, a plaintiff must
23 prove a (1) defendant's knowing use and (2) "a direct connection between the alleged use and the
24 commercial purpose." *Id.*
25 　　　　Here, because the court finds there is a genuine dispute as to whether defendants
26 used plaintiff's name knowingly and whether there is a direct connection between ACS's alleged
27 unauthorized use of plaintiff's license and the commercial purpose, the court denies plaintiff's
28 motion.

1   As to the requirement of knowing use, on the one hand, defendants' 2006 and
2   2008 renewal applications for a license show defendants used plaintiff's name as their qualified
3   manager.  (*See* Exs. 5 & 6, ECF No. 38-2 & ECF No. 41-1, Ex. 2.)  There can be no dispute
4   defendants' use of plaintiff's name from 2006 to 2010 was knowing.  On the other hand,
5   defendants' renewal applications for 2010 and 2012 specify Bannon as ACS's qualified manager.
6   (*See* Exs. 9 & 10, ECF No. 38-2.)  Bannon also testified at the time he submitted the 2010 and
7   2012 renewal applications, he did not know plaintiff remained as ACS's qualified manager.
8   (Bannon Dep. 105:1–19, ECF No. 39-5.)  There is a genuine dispute requiring a jury resolution as
9   to whether ACS's use of plaintiff's license from 2006 to 2013 was knowing.  *See Yeager v.*
10  *Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("the court is not to make credibility determinations
11  when granting or denying summary judgment.").

12  In their opposition papers, defendants also argue plaintiff cannot state a section
13  3344 claim as a matter of law because "[t]he use of [plaintiff's] name was for the administrative
14  purpose of obtaining a license"; defendants' "alleged actions did not include use on or in
15  products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases
16  of, products, merchandise, goods or services as required by [section] 3344."  (ECF No. 39 at 8.)

17  The court finds defendants' argument unpersuasive.  "A 1984 amendment to
18  section 3344 eliminated the requirement that the misappropriation must occur in a product
19  advertisement, endorsement or solicitation."  *Solano*, 292 F.3d at 1089 n.7.  Defendants cite no
20  authority to support their reading of the statute other than the language of the statute itself.  (*See*
21  ECF No. 39 at 7–8.)  The plain language of the statute does not support defendants' position.  *See*
22  *Orthopedic Sys., Inc. v. Schlein*, 202 Cal. App. 4th 529, 545 (2012) (in construing a statute, a
23  court must first consider the plain meaning of the statute at hand).  The plain text of section 3344
24  provides simply that "[a]ny person who knowingly uses another's name, . . . , signature,
25  photograph, or likeness, in any manner . . . for purposes of . . . selling, or soliciting purchases of .
26  . . services[] without such person's prior consent . . . shall be liable for any damages sustained by
27  the person . . . ."  CAL. CIV. CODE § 3344(a).  "The human problem to be solved by section
28  3344(a) is the provision of a remedy to a person whose name, among other things, is

8

misappropriated." *Orthopedic Sys., Inc.*, 202 Cal. App. 4th at 546.  For this court to say that as a matter of law plaintiff cannot state a claim for misappropriation "would be contrary to the spirit of the statute . . . ." *Id.* at 547.

Defendants' argument, that "[t]he use of [plaintiff's] name was for the administrative purpose of obtaining a license," is better suited for a jury to hear.  The requirement that there be "a direct connection between the alleged use and the commercial purpose," *Downing*, 265 F.3d at 1001, raises a factual rather than a legal question; it is a jury's province to answer it.  The court denies plaintiff's motion on this ground as well.

IV.   CONCLUSION

For the foregoing reasons, the court DENIES plaintiff's motion.

IT IS SO ORDERED.

DATED: November 5, 2014.

_____
UNITED STATES DISTRICT JUDGE