UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL QUIGLEY, aka CAROL DIANE EUWEMA,<br><br>            Plaintiff,<br><br>    v.<br><br>AMERICAN CLAIMS SERVICES, INC., JOHN BANNON, BILL T. JOHNSON, SUSAN B. JOHNSON, and DOES 1 through 50, inclusive,[1]<br><br>            Defendants. | No. 2:13-cv-01766-KJM-EFB<br><br><br>ORDER |

        This matter is before the court on the motion for summary judgment by defendants American Claims Services, Inc. (ACS), John Bannon, Bill T. Johnson, and Susan B. Johnson

---

[1] The Ninth Circuit provides that "'[plaintiffs] should be given an opportunity through discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the alleged defendant[] [is] not [] known prior to the filing of a complaint.'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)) (modifications in the original). Plaintiff is warned, however, that such defendants will be dismissed before trial where "'it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *Id*. (quoting *Gillespie*, 629 F.2d at 642). Plaintiff is further warned that Federal Rule of Civil Procedure 4(m), which states that the court must dismiss defendants who have not been served within 120 days after the filing of the complaint unless plaintiff shows good cause, is applicable to doe defendants. *See Glass v. Fields*, No. 09-00098, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive Prods. v. Does*, No. 11-01567, 2011 U.S. Dist. LEXIS 109837, at *2–4 (N.D. Cal. Sep. 27, 2011).

1

1  (collectively, defendants). (Defs.' Mot. Summ. J., ECF No. 51.) The court submitted the matter
2  without a hearing. As explained below, the court DENIES in part and GRANTS in part
3  defendants' motion.

4  I.     UNDISPUTED FACTS

5         The claims in this case arise out of defendants' alleged unauthorized use of
6  plaintiff's insurance adjuster license in California. Plaintiff is a California licensed insurance
7  adjuster. (ECF No. 13 at 2.) ACS is an insurance claims management company that engaged in
8  the business of adjusting insurance liability claims in California from 2005 to 2013. (Pl.'s Resp.
9  Defs.' Separate Statement Undisputed Facts ¶ 1, ECF No. 61.) John Bannon was ACS's
10 president. (*Id.* ¶ 2.) Bill Johnson was a shareholder of ACS. (*Id.* ¶ 3.) Susan Johnson was
11 ACS's chief financial officer. (*Id.* ¶ 4.)

12        In February 2006, Mr. Bannon, on behalf of ACS, sent a letter to plaintiff
13 requesting that she become defendants' qualified manager in California by completing a form
14 with the California Department of Insurance (DOI). (ECF No. 39-1 ¶ 4.) ACS made that request
15 because it could not conduct business in California without an organization insurance adjuster
16 license; ACS could obtain an organization insurance adjuster license if it retained a licensed
17 qualified manager in California. (*See id.* ¶ 9; *see also* ECF No. 39-5 at 81.) In the same letter,
18 Mr. Bannon stated he would "make every effort to substitute [himself] for [plaintiff] ASAP."
19 (Ex. 4, ECF No. 38-2.) In return for the use of plaintiff's name and license, ACS agreed to send
20 contract work to plaintiff. (ECF No. 43 ¶ 3; ECF No. 61 ¶ 18.)

21        Plaintiff agreed and filled out a form with the DOI, thus becoming ACS's qualified
22 manager. (Ex. 5, ECF No. 38-2.) Consequently, the DOI issued a license to ACS, with an
23 effective date of March 2006. (Ex. 6, ECF No. 38-2.) That license included plaintiff's name as a
24 qualified manager. (*Id.*) When ACS's license was renewed in July 2008, plaintiff was again
25 named as the designated qualified manager for ACS. (Ex. 8, ECF No. 38-2.) Plaintiff "remained
26 continuously designated as the qualified manager until January 31, 2013, when she was
27 terminated from that organization license." (*Id.*) However, for the 2010 and 2012 renewals,
28 defendants did not include plaintiff's name as the qualified manager on the renewal applications;

2

1  rather, the applications identified Mr. Bannon as ACS's qualified manager.  (*See* Exs. 9 & 10,
2  ECF No. 38-2.)  Plaintiff alleges that she never allowed ACS to use her name and license for such
3  a long time and that she first learned about ACS's alleged unauthorized use on January 8, 2013.
4  (*See* ECF No. 38-1 at 3; ECF No. 61 ¶ 25.)  At that time, plaintiff sent a letter to Mr. Bannon,
5  noting she had learned about ACS's use and that ACS's use had exceeded her initial
6  authorization's scope.  (Ex. 11, ECF No. 38-2.)  When plaintiff contacted defendants, defendants
7  did not deny that ACS "continued to list [plaintiff's] name with the [DOI]."  (ECF No. 61 ¶ 26.)
8  In February 2013, Mr. Bannon became ACS's qualified manager.  (Ex. 1 at 25, ECF No. 38-5.)

9  The operative complaint makes four claims: (1) misrepresentation and fraud;
10 (2) unfair competition and trade practices; (3) conversion; and (4) misappropriation of name,
11 identity, likeness, and signature.  (*See generally* Second Am. Compl., ECF No. 14.)  On
12 November 5, 2014, this court denied plaintiff's motion for summary judgment on her
13 misappropriation claims.  (ECF No. 58.)  Defendants now move for summary judgment on all of
14 plaintiff's four claims.  (ECF No. 51.)  Plaintiff opposes the motion (ECF No. 60), and defendants
15 have replied (ECF No. 69).

16 II.    SUMMARY JUDGMENT STANDARD

17 Under Federal Rule of Civil Procedure 56(a), a "party may move for summary
18 judgment, identifying each claim or defense—or the part of each claim or defense—on which
19 summary judgment is sought."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "if
20 . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a
21 matter of law."  *Id.*  The "threshold inquiry" is whether "there are any genuine factual issues that
22 properly can be resolved only by a finder of fact because they may reasonably be resolved in
23 favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[2]

24 The moving party bears the initial burden of showing the district court "that there
25 is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*,

---

[2] Rule 56 was amended, effective December 1, 2010.  However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged."  Fed. R. Civ. P. 56, advisory committee's note on 2010 amendments.

1  477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish
2  that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio*
3  *Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular
4  parts of materials in the record . . . ; or show[] that the materials cited do not establish the absence
5  or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to
6  support the fact."  Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the
7  nonmoving party] must do more than simply show that there is some metaphysical doubt as to the
8  material facts").  Moreover, "the requirement is that there be no *genuine* issue of *material* fact
9  . . . .  Only disputes over facts that might affect the outcome of the suit under the governing law
10 will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48
11 (emphasis in original).

12      In deciding a motion for summary judgment, the court draws all inferences and
13 views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at
14 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record taken as a
15 whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine
16 issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv.*
17 *Co.*, 391 U.S. 253, 289 (1968)).

18      A court may consider evidence as long as it is "admissible at trial." *Fraser v.*
19 *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  "Admissibility at trial" depends not on the
20 evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001)
21 (citing *Celotex Corp.*, 477 U.S. at 324).  The party seeking admission of evidence "bears the
22 burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir.
23 2002).  If the opposing party objects to the proposed evidence, the party seeking admission must
24 direct the district court to "authenticating documents, deposition testimony bearing on attribution,
25 hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in
26 question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86
27 (9th Cir. 2010).  However, courts are sometimes "much more lenient" with the affidavits and
28 /////

1    documents of the party opposing summary judgment.  *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240,
2    1243 (9th Cir. 1979).

3    III.      DISCUSSION

4              Defendants make six main arguments.  First, defendants contend plaintiff's four
5    claims are barred by the applicable statutes of limitations.  (ECF No. 51 at 6–13.)  Second,
6    defendants argue Bill Johnson and Sue Johnson are not vicariously liable for any acts in which
7    they did not personally participate.  (*Id.* at 13–14.)  Third, defendants maintain plaintiff has no
8    remedy under California Business and Professions Code section 17200, *et seq.* (UCL).  (*Id.* at
9    14-17.)  Fourth, defendants reason plaintiff's conversion claim cannot proceed because
10   defendants' acts did not interfere with plaintiff's use of her license.  (*Id.* at 17–18.)  Fifth,
11   defendants assert plaintiff's misappropriation claim does not apply to the facts of this case
12   because the use of plaintiff's license was for administrative purposes only.  (*Id.* at 18–19.)
13   Finally, defendants say plaintiff cannot recover punitive damages as a matter of law.  (*Id.* at
14   19-20.)

15             The court addresses each argument in turn.

16   A.        Statutes of Limitations

17             In essence, defendants argue the limitations period for each of plaintiff's four
18   claims began to run in June 2006, and no circumstances existed to interrupt or suspend the
19   limitations period.  (*Id.* at 6–13.)  Plaintiff responds the discovery rule defeats defendants'
20   arguments.  (ECF No. 60 at 4–15.)  Defendants reply plaintiff has "failed to establish her
21   reasonable diligence would not have discovered the listing of her name with the [DOI]."  (ECF
22   No. 69 at 2.)

23             In diversity of citizenship actions, such as this one, federal courts apply state
24   statutes of limitations.  *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 109–10 (1945).  Statues of
25   limitations are designed to preclude the assertion of stale claims and to encourage plaintiffs to
26   assert fresh claims in a diligent manner so that the claims can be resolved on their merits.  *See*
27   *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 395 (1999).  A statute of limitations operates as an
28   affirmative defense; a defendant bears the burden of proving all the essential facts to show a

5

1   claim is barred by an applicable statute of limitations. *Ladd v. Warner Bros. Entm't*, 184 Cal.
2   App. 4th 1298, 1309–10 (2010). "Under the statute of limitations, a plaintiff must bring a [claim]
3   within the limitations period applicable thereto after accrual of the [claim]." *Norgart*, 21 Cal. 4th
4   at 397. The general rule for determining the date of a claim's accrual is the time when the claim
5   "is complete with all of its elements." *Id.*

6         The "most important" exception to the general rule of accrual is the discovery rule.
7   *Id.* (internal quotation marks omitted). Under the discovery rule, a claim's accrual is postponed
8   until a plaintiff "discovers, or has reasons to discover," the claim. *Id.* A plaintiff discovers a
9   claim when she suspects "that someone has done something wrong to her." *Jolly v. Eli Lilly &*
10  *Co.*, 44 Cal. 3d 1103, 1110 (1988). The word "wrong" is not used in any technical sense, "rather
11  in accordance with its lay understanding." *Norgart*, 21 Cal. 4th at 397–98 (internal quotation
12  marks omitted). A plaintiff has reason to discover the claim when she "has reason at least to
13  suspect a factual basis for its elements." *Id.* at 398. A plaintiff has a reason to suspect when she
14  has "notice or information of circumstances to put a reasonable person *on inquiry*." *Id.* (emphasis
15  in original, internal quotation marks omitted). Once a suspicion exists, "it is clear that the
16  plaintiff must go find the facts; she cannot wait for the facts to find her." *Jolly*, 44 Cal. 3d at
17  1111. "While resolution of the statute of limitations issue is normally a question of fact, where
18  the uncontradicted facts established through discovery are susceptible of only one legitimate
19  inference, summary judgment is proper." *Id.* at 1112; *see also Avila v. Willits Envtl. Remediation*
20  *Trust*, 633 F.3d 828, 840–43 (9th Cir. 2011); *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,
21  198 F.3d 823, 832 (11th Cir. 1999) (noting "as a general rule, the issue of when a plaintiff in the
22  exercise of due diligence should have known of the basis for his claims is not an appropriate
23  question for summary judgment").

24        Here, the court finds there is a genuine dispute of material fact as to the date on
25  which plaintiff was placed on inquiry notice of defendants' alleged wrongs; thus, summary
26  judgment in defendants' favor is inappropriate.

27        On the one hand, defendants argue plaintiff was placed on inquiry notice in June
28  2006, "at the time of the alleged automatic revocation of [p]laintiff's consent." (ECF No. 51 at

1  10.)  That is so, defendants reason, because although plaintiff continued to receive work from
2  ACS even after June 2006, she did not make any effort "for the next six years to check whether
3  she remained listed with the DOI as ACS[']s qualified manager."  (*Id.* at 11.)  That plaintiff
4  continued to receive work after June 2006 should have placed plaintiff on inquiry notice to
5  investigate the circumstances, defendants contend.  (*Id.*)

6        Plaintiff argues she was placed on inquiry notice in June 2012.  (ECF No. 60 at 5.)
7  Plaintiff states that in June 2012, she spoke with one Pat Bruce, who informed plaintiff that ACS,
8  without Ms. Bruce's consent, had used Ms. Bruce's name as ACS's agent for service of process.
9  (Quigley Decl. ¶ 9, ECF No. 62.)  "When apprised of this information[,] [plaintiff] advised
10 Ms. Bruce that [she] had allowed [ACS] and Mr. Bannon to use [her] name and license in 2006
11 for a brief period of time."  (*Id.*)  Ms. Bruce "speculated" that ACS could have still been using
12 plaintiff's license.  (*Id.*)  After speaking with Ms. Bruce, plaintiff accessed the DOI website and
13 searched for her name and ACS's name, but did not find herself as the designated qualified
14 manager for the ACS.  (*Id.*)  Consequently, plaintiff "concluded that Ms. Bruce's concerns were
15 unfounded."  (*Id.*)  In January 2013, however, when plaintiff again accessed the DOI website and
16 searched for her name and ACS's name, she "was shocked to discover that [she] was listed as
17 ASC[']s [q]ualified [m]anager."  (*Id.* ¶ 10.)

18       These facts do not support only one legitimate inference.  A trier of fact could
19 reasonably conclude that before her 2012 conversation with Ms. Bruce, plaintiff was justified in
20 relying on Mr. Bannon's representation that he would "make every effort to substitute [himself]
21 in for [plaintiff] ASAP" (Ex. 4, ECF No. 38-2), and that plaintiff had no obligation to investigate
22 whether Mr. Bannon actually replaced her "ASAP" (*id.*).  Or, a trier of fact could reasonably
23 conclude that because in exchange for using plaintiff's license ACS had agreed to send contract
24 work to plaintiff (ECF No. 43 ¶ 3; ECF No. 61 ¶ 18), and because ACS continued to send
25 contract work even after June 2006, plaintiff should have become suspicious of ACS's possible
26 continuing use of plaintiff's license (ECF No. 61 ¶ 18).  Summary judgment is improper.
27 /////
28 /////

7

B. <u>Vicarious Liability of Bill Johnson and Sue Johnson</u>

Defendants next argue that Bill Johnson and Sue Johnson are not vicariously liable for the alleged wrongs committed by John Bannon and ACS because they were not personally involved in the events surrounding the subject agreement. (ECF No. 51 at 13–14.) Plaintiff counters that Bill Johnson and Sue Johnson are directly and vicariously liable. (ECF No. 60 at 19–20.)

"It is well settled that corporate directors cannot be held *vicariously* liable for the corporation's torts in which they do not participate. Their liability, if any, stems from their own tortious conduct, not from their status as directors or officers of the enterprise." *Frances T. v. Vill. Green Owners Assn.*, 42 Cal. 3d 490, 503 (1986) (emphasis in original). The California Supreme Court has observed that

> an officer or director will not be liable for torts in which he does not personally participate, of which he has no knowledge, or to which he has not consented. . . . While the corporation itself may be liable for such acts, the individual officer or director will be immune unless he authorizes, directs, or in some meaningful sense actively participates in the wrongful conduct.

*Id.* at 503–04 (internal quotation marks omitted). "Directors are jointly liable with the corporation and may be joined as defendants if they personally directed or participated in the tortious conduct." *Id.* at 504.

Here, the court grants summary judgment in favor of Bill Johnson and Susan Johnson. They have shown there is no triable issue of fact as to whether they authorized, directed, or in some other sense actively participated in the alleged wrongful conduct.

It is undisputed that while Bill Johnson was a shareholder of ACS and a co-president (ECF No. 61 ¶ 3), plaintiff "never met . . . [Mr. Johnson], had a conversation with [Mr. Johnson], nor contacted him about her remaining listed as ACS[']s qualified manager." (*Id.* ¶ 5.) In addition, while Susan Johnson was ACS's chief financial officer (*id.* ¶ 4), she "was not involved in any discussion regarding the consent or cessation of ACS[']s listing of [p]laintiff's name as its qualified manager." (ECF No. 51-8 ¶ 3.) Plaintiff, as the opposing party, has not pointed to evidence in the record to dispute Mr. Johnson's and Ms. Johnson's averments.

8

Because there is no genuine dispute of material fact as to whether Mr. Johnson and Ms. Johnson personally participated, had knowledge of, or consented to ACS's alleged wrongful acts, the court enters summary judgment in their favor as to plaintiff's vicarious liability theory.

        C.       Remedies Available under California Business & Professions Code Section 17200, *et seq*. (UCL)

The remedies the UCL provides are limited to injunctive relief and restitution. *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 452 (2005).

Defendants argue plaintiff does not have standing to proceed with her request for injunctive relief. They say the request is moot as defendants no longer identify plaintiff as their qualified manager and ACS has no intent to do so in the future. (ECF No. 51 at 14–15.) In addition, they conclude plaintiff cannot recover restitution because "[d]efendants obtained no money from [p]laintiff" (*id.* at 15).

Plaintiff counters she is entitled to a permanent injunction, and defendants' assurances that they will not use plaintiff's license in the future "mean nothing" based on defendants' "extensive pattern and practice of deceit" in the past. (ECF No. 60 at 18–19.) Plaintiff also responds the issue of whether she is entitled to restitution is a factual question "not amenable to resolution on summary judgment." (*Id.* at 19.)

        a.       Injunctive Relief

Injunctive relief is available only where there is a threat of continuing wrongdoing. *Id.* at 463–64. Hence, "an injunction may not issue unless the alleged misconduct is ongoing or likely to recur." *Id.* at 464.

Here, defendants have met their burden of showing plaintiff's request for injunctive relief is moot. It is undisputed that plaintiff's name as ACS's qualified manager has been removed from the DOI's records. (ECF No. 61 ¶¶ 27–28.) Further, Mr. Bannon states that ACS has no intention to re-list plaintiff as their qualified manager with the DOI in the future. (Bannon Decl. ¶ 9, ECF No. 51-6.) There is no continuing harm as required for injunctive relief. Moreover, plaintiff has not pointed to any "evidence establishing the reasonable probability the acts will be repeated in the future." *Madrid*, 130 Cal. App. 4th at 465 (internal quotation marks

1  omitted). That is especially so in light of the fact that to obtain a new adjuster license with
2  plaintiff identified as its qualified manager, ACS would have to file new forms with the DOI. *See*
3  California Department of Insurance, Forms 042-A and 31A-9.[3] Therefore, the court GRANTS
4  summary judgment in defendants' favor as to plaintiff's request for injunctive relief under the
5  UCL.

                b.      Restitution

7  While restitution can refer to a disgorgement of something that was taken and also
8  can refer to compensation for injury, in the UCL context, restitution "is limited to the return of
9  property or funds in which the plaintiff has an ownership interest." *Id.* at 453. That is, under the
10 UCL, "an individual may recover profits unfairly obtained to the extent that these profits
11 represent monies given to the defendant or benefits in which the plaintiff has an ownership
12 interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003). "The
13 object of restitution is to restore the status quo by returning to the plaintiff funds in which he or
14 she has an ownership interest." *Id.* at 1149.

15 Here, the court finds defendants have met their burden of showing the restitution
16 remedy plaintiff seeks to recover is unavailable under the UCL. The remedy plaintiff seeks is not
17 restitutionary because she has presented no evidence of an ownership interest in any funds she
18 seeks to recover from defendants. First, there is no evidence plaintiff is seeking the return of
19 money that was once in her possession; any award plaintiff may recover from defendants would
20 not be restitutionary because it would not replace money defendants took from her. *Id.* Further,
21 plaintiff points to no evidence to show she had a vested interest in funds she seeks to recover. *Cf.*
22 *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178 (2000) (restitution under
23 UCL available for earned wages due and payable because they are vested property rights).

---

[3] Under Federal Rule of Evidence 201(b), the court takes judicial notice of Forms 042-A and 31A-9 because they are matters of public record and are not subject to reasonable dispute. *See* California Department of Insurance Website, Insurance Adjuster License Information, http://www.insurance.ca.gov/0200-industry/0050-renew-license/0200-requirements/insurance-adjuster.cfm (last visited Mar. 17, 2015). *See also Jarvis v. JP Morgan Chase Bank, N.A.*, No. 10-4184, 2010 WL 2927276, at *1 (C.D. Cal. July 23, 2010) ("Judicial notice may be taken of documents available on government websites.").

1    Rather, plaintiff seeks disgorgement of profits defendants made while utilizing plaintiff's
2    insurance license in California.  (*See* ECF No. 60 at 19.)  As in another state case, "[t]he
3    nonrestitutionary disgorgement remedy sought by plaintiff closely resembles a claim for
4    damages, something that is not permitted under the UCL."  *Korea Supply Co.*, 29 Cal. 4th at
5    1150–51.  The court GRANTS summary judgment in favor of defendants as to plaintiff's request
6    for restitutionary relief under the UCL.
7         Because defendants have met their burden of showing that plaintiff cannot recover
8    any of the remedies available under the UCL, the court GRANTS summary judgment in favor of
9    defendants on plaintiff's UCL claim.
10        D.   Conversion
11        Defendants argue plaintiff cannot prove they interfered with plaintiff's ability to
12   use her license because she continued to handle claims for another company during the relevant
13   period.  (ECF No. 51 at 17–18.).  Plaintiff counters whether she "could still use her license is
14   irrelevant," because she was deprived of the right to charge a fee for that use.  (ECF No. 60 at
15   17.)
16        "In California, conversion has three elements: [(1)] ownership or right to
17   possession of property, [(2)] wrongful disposition of the property right and [(3)] damages."
18   *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir.
19   1992).  The second of these elements is at issue.  To satisfy the second element, "it is only
20   necessary to show an assumption of control or ownership over the property, or that the alleged
21   converter has applied the property to [its] own use."  *Enter. Leasing Corp. v. Shugart Corp.*,
22   231 Cal. App. 3d 737, 747 (1991) (internal quotation marks omitted).
23        Here, the court finds defendants have not met their burden of showing an absence
24   of evidence to satisfy the second element of plaintiff's conversion claim as a matter of law.
25   Specifically, it is undisputed that ACS used plaintiff's name and license until Mr. Bannon
26   replaced plaintiff as qualified adjuster.  (ECF No. 61 ¶¶ 18, 28.)  Hence, a reasonable trier of fact
27   could find ACS applied plaintiff's license to its own use.  *See G.S. Rasmussen & Associates, Inc.*,
28   958 F.2d at 906 (finding interference requirement satisfied where defendant photocopied

1 plaintiff's certificate, presented it to an agency, and "thereby obtained a valuable benefit as a
2 consequence of using [the plaintiff's certificate] without authorization or permission"); *J & J*
3 *Sports Prods., Inc. v. Pagliaro*, No. 12-1507, 2014 WL 2091356, at *3 (E.D. Cal. May 19, 2014)
4 (finding interference requirement satisfied where defendant owners of a restaurant intercepted
5 transmission of televised boxing match, exclusive distribution rights of which belonged to
6 plaintiff). The court DENIES defendant's motion for summary judgment as to plaintiff's
7 conversion claim.

       E.       Misappropriation

9        Defendants repeat essentially the same arguments here that they raised in opposing
10 plaintiff's previous motion for summary judgment. (ECF Nos. 38, 39.) The court has now
11 addressed those arguments in its prior order and found them unpersuasive. (*See* Order, ECF
12 No. 58 at 7–9.) The court DENIES defendants' motion for summary judgment as to plaintiff's
13 misappropriation claim.

       F.       Punitive Damages

15        Defendants argue plaintiff cannot recover punitive damages for two reasons: first,
16 plaintiff cannot recover punitive damages because she has suffered no actual damages (ECF No.
17 51 at 19–20), and second, punitive damage are unavailable in a breach of contract case (*id.* at 20).
18        As to defendants' first argument, plaintiff counters defendants provide no evidence
19 to support their argument that plaintiff has not suffered any actual damages. (ECF No. 60 at 18.)
20 As to defendants' second argument, plaintiff responds her tort claims support a punitive damages
21 award. (*Id.*)
22        "It is settled law in California that punitive damages cannot be awarded unless
23 actual damages are suffered." *Werschkull v. United California Bank*, 85 Cal. App. 3d 981, 1002
24 (1978). At this stage of litigation, defendants have not shown plaintiff lacks sufficient evidence
25 to support a claim for actual damages. At the very least, there is a genuine dispute of material
26 fact as to whether plaintiff has suffered actual damages. While defendants, without citing to the
27 record, contend "[p]laintiff has not suffered any actual monetary damages," plaintiff testified in
28 /////

her deposition that if she had known defendants intended to use her license for more than a few months, she would have sought compensation. (ECF No. 61 ¶ 34.)

Finally, the court finds defendants' second argument unpersuasive as well. Contrary to defendants' assertion, plaintiff brings tort-based claims, including misappropriation, fraud, and conversion. In California, a plaintiff may recover punitive damages based on all three tort claims. *See* Cal. Civ. Code § 3344(a) (misappropriation); *Glovatorium, Inc. v. NCR Corp.*, 684 F.2d 658, 663 (9th Cir. 1982) (fraud); *Krieger v. Pac. Gas & Elec. Co.*, 119 Cal. App. 3d 137, 148 (1981) (conversion). Accordingly, the court DENIES defendants' motion for summary judgment as to plaintiff's request for punitive damages.

IV. CONCLUSION

For the foregoing reasons, the court orders as follows:

1. Defendants' Motion for Summary Judgment is DENIED as to defendants' statutes of limitations argument, as to plaintiff's conversion and misappropriation claims, and as to plaintiff's request for punitive damages.

2. Defendants' Motion for Summary Judgment is GRANTED in favor of defendants Bill Johnson and Sue Johnson as to plaintiff's vicarious liability theory and in favor of all defendants as to plaintiff's UCL claim.

IT IS SO ORDERED.

DATED: March 18, 2015.

_____
UNITED STATES DISTRICT JUDGE