UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL QUIGLEY, aka, CAROL DIANE EUWEMA,<br><br>                    Plaintiff,<br><br>          v.<br><br>AMERICAN CLAIMS SERVICES, INC., et al.,<br><br>                    Defendants. | No.  2:13-CV-01766-KJM-EFB<br><br><br>ORDER |

On May 22, 2015, the court conducted a final pretrial conference.  Stephen Castronova appeared for plaintiff Carol Quigley, and Adrienne Cohen and Veronika Zappelli appeared for the defendants.  After hearing, and good cause appearing, the court makes the following findings and orders:

JURISDICTION/VENUE

Jurisdiction is predicated on 28 U.S.C. § 1332.  Jurisdiction and venue are not contested.

JURY/NON-JURY

Defendants have demanded a jury trial.  The jury shall be composed of seven jurors.

/////

/////

1

UNDISPUTED FACTS

1. Defendant ACSI is a Louisiana corporation that provided insurance claims handling services in California from 2005 to 2013.

2. Defendant John Bannon was the President and a shareholder of ACSI. In February 2006 plaintiff and ACSI reached agreement regarding the listing of plaintiff's name as the qualified manager on California Department of Insurance Form 31A-9.

3. Pursuant to the parties' agreement, ACSI was permitted to use plaintiff's name by listing her as the qualified manager for a brief period of time, which John Bannon defined as "a couple of months."

4. Plaintiff received independent adjusting work from ACSI whereby she would appear at settlement conferences and mediations on behalf of ACSI.

5. Plaintiff did not ask for any monetary compensation in exchange for the use of her name as qualified manager for the period of time that the parties agreed her name could be used.

6. Plaintiff was designated as ACSI's qualified manager from March 2006 through January 2013.

7. Plaintiff filled out California Department of Insurance Form 31A-9 which included her name, photograph, and fingerprints and the executed form was provided to the Department of Insurance by defendants.

8. Plaintiff was paid in full for all of the independent adjusting work that she performed for ACSI.

9. Plaintiff claims that she relied upon the express representations of John Bannon and consequently, up until June 2012 she undertook no act to confirm whether her name remained listed identifying her as ACSI's qualified manager.

10. From March 2006 to the present, plaintiff has never faced a lawsuit, liability, or claim as a result of being listed as ACSI's qualified manager.

DISPUTED FACTUAL ISSUES

1. Plaintiff contends that the use of her name and personal data was unauthorized and without her consent from June 2006 through January 2013.

2. Plaintiff contends that she sustained damages in the form of: loss of profits; denial of the right to charge a fee for the use of her name, personal data, and license; lost business opportunities; mental anguish; invasion of privacy.

3. Defendants contend that plaintiff expressly consented to the listing of her name in 2006 when she filled out California Department of Insurance Form 31A-9, which included her name, photograph, and fingerprints, and submitted this information to the California Department of Insurance.

4. Defendants contend that plaintiff impliedly consented to the continued listing of her name as ACSI's qualified manager when she continued to receive independent adjusting work from ACSI during the entire time her name was listed as the qualified manager.

5. Defendants contend that plaintiff has suffered no monetary damages and defendants dispute that plaintiff sustained injury in fact, or recoverable damages.

6. Defendants further contend that plaintiff's complaint, and all causes of action stated therein, are barred by the applicable statutes of limitations.

SPECIAL FACTUAL INFORMATION

The court notes the section titled special factual information submitted with the parties' joint pretrial statement.  *See* Joint Pretrial Statement 4–8, ECF No. 105; E.D. Cal. L.R. 281(b)(6) (providing for the inclusion of special factual information in certain actions).  To the extent this information is more appropriately presented as legal argument, it may be included in the trial briefs provided for below.

DISPUTED EVIDENTIARY ISSUES

Plaintiff contends that evidence regarding income generated by her from other sources between 2006 and 2012 is irrelevant to any claim in this case and such evidence should be precluded.  Plaintiff contends that the testimony of defendants' non-retained experts should be limited to only those opinions set forth in the expert disclosure and limited to percipient observations only.  Plaintiff contends that John Bannon is to be precluded from offering any expert opinions at trial based upon his testimony in deposition that he would not offer any expert

/////

3

1  opinions at trial.  Plaintiff has filed Motions in Limine on these issues concurrently with this Joint

2  Pre-Trial Statement.

3      Defendants contend that the testimony of any prior or current employee of ACSI is

4  irrelevant to establishing any element of plaintiff's claims and, therefore, should be precluded.

5  Defendants contend that any allegations of unfair business practices including, but not limited to,

6  Pat Bruce being listed as ACSI's agent for service of process, Pat Bruce's address being listed as

7  the primary place of business for ACSI's California operations, and any allegations of tax fraud

8  or unfair business practices by ACSI are irrelevant to establishing any element of plaintiff's

9  claims and, therefore, should be precluded.  Defendants have filed Motions in Limine on these

10  issues concurrently with this Joint Pre-Trial Statement.

11  STIPULATIONS/AGREED STATEMENTS

12      The parties agree that the financial records of all defendants should remain confidential,

13  and have agreed to a stipulated protective order regarding all financial documents produced by

14  the defense.  They shall further meet and confer to reach agreement on means to avoid the need

15  for a trial protective order or the sealing of exhibits, and report on this subject on the first day of

16  trial.

17      The parties have stipulated that authenticated copies of documents and exhibits may be

18  used at trial in lieu of the originals. The parties also stipulate that the testimony of the custodian

19  of records for the documents obtained from the Department of Insurance and Secretary of State

20  will not be required in order to authenticate or admit documents obtained from these state

21  agencies.

22  RELIEF SOUGHT

23      For her breach of contract and misrepresentation claims, plaintiff seeks monetary damages

24  in the form of (1) loss of profits; (2) loss of the right to charge a fee; and (3) the difference

25  between the monetary benefits promised but not delivered.  Plaintiff seeks the following damages

26  in particular:

27  /////

28  /////

4

| Month - Year | Total Months | $5K Per Month | Total |
|---|---|---|---|
| 3/22/06  - 12/31/06 | 9 | $45,000 | $45,000 |
| 1/01/07 - 12/31/07 | 12 | $60,000 | $105,000 |
| 1/01/08 - 5/31/08 | 5 | $25,000 | $130,000 |
| 7/23/08 - 12/31/08 | 5 | $25,000 | $155,000 |
| 1/01/9 - 12/31/09 | 12 | $60,000 | $215,000 |
| 1/01/10 - 12/31/10 | 12 | $60,000 | $275,000 |
| 1/01/12 - 12/31/12 | 12 | $60,000 | $395,000 |
| 1/01/11 - 12/31/11 | 12 | $60,000 | $335,000 |
| 1/01/12 - 1/31/13 | 1 | $5,000 | $400,000 |

For her tort claims, plaintiff seeks actual damages for the uncompensated use of her name, signature, likeness and license.  She intends to provide expert testimony to show her damages are $5.2 million.  Plaintiff also seeks disgorgement of the revenue realized by ACSI and Bannon based on California Civil Code Section 3344.

POINTS OF LAW

The parties shall file trial briefs more completely addressing the points of law related to the following summary of their positions, with briefs filed with this court no later than seven days prior to the date of trial in accordance with Local Rule 285.

The legal theories of recovery upon which plaintiff's claims are based are common law misrepresentation; unjust enrichment; conversion of property under California Civil Code Section 3336; common law misappropriation; and statutory misappropriation of name, signature, and likeness under California Civil Code Section 3344.  Plaintiff contends that defendants do not deny using plaintiff's name, signature, likeness and adjuster's license beyond the agreed upon time period for which consent was given.

Defendants assert that plaintiff expressly consented to the listing of her name and impliedly consented to the continued listing of her name because she did not contact defendants to confirm that use of her name had been discontinued and she continued to accept independent adjusting work from ACSI.  Defendants contend that plaintiff has suffered no damages.

Defendants contend that Section 3344's right to privacy or right to publicity exists to protect individuals against the appropriation of the commercial value of their name, voice, signature, photograph, or likeness.  Defendants contend that they did not use Plaintiff's name "on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services…"  As such, they argue Section 3344 does not apply.  Defendants further contend that they did not make any profits as a direct result of listing plaintiff's name as the qualified manager.  The listing of her name was to satisfy an administrative purpose only.

Defendants contend that plaintiff's claims originate from the alleged breach of an oral agreement which, according to plaintiff, occurred when her consent was automatically revoked in June 2006.  Plaintiff has not pled a cause of action for breach of contract and, as such, any such claim is barred as a matter of law and by the applicable statute of limitations.  Defendants contend that the date of accrual for each and every one of plaintiff's claims began in June 2006.  As a result, defendants contend that all claims are barred by the applicable statutes of limitations.  Defendants contend that the listing of plaintiff's name as qualified manager on ACSI's license application with the DOI does not amount to misappropriation under the common law or the plain meaning of Section 3344.

Defendants contend that plaintiff has suffered no actual damages based on any alleged conduct of defendants and, therefore, punitive damages are not allowed when no actual damages have been suffered.

ADJUDICATED/ABANDONED ISSUES

The court has granted summary judgment in favor of Bill Johnson and Susan B. Johnson effectively dismissing them from this lawsuit.  The court has also granted summary judgment in favor of defendants as to plaintiff's cause of action for unfair competition or trade practices.

No issues have been abandoned.

WITNESSES

Plaintiff's witnesses shall be those persons described in Attachment 1, *see also* Joint Pretrial Statement Ex. 1, ECF No. 105, and defendants' witnesses shall be those persons

described in Attachment 2, *see also id.* Ex. 3.  Each party may call any witnesses designated by the other.

    A.    The court will not permit any other witness to testify unless:

        (1)    The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

        (2)    The witness was discovered after the pretrial conference and the proffering party makes the showing required in "B," below.

    B.    Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so the court may consider whether the witnesses shall be permitted to testify at trial.  The witnesses will not be permitted unless:

        (1)    The witness could not reasonably have been discovered prior to the discovery cutoff;

        (2)    The court and opposing parties were promptly notified upon discovery of the witness;

        (3)    If time permitted, the party proffered the witness for deposition; and

        (4)    If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

EXHIBITS, SCHEDULES, AND SUMMARIES

Plaintiff's exhibits shall be those identified in Attachment 3, *see also* Joint Pretrial Statement Ex. 2, and defendants' exhibits shall be those identified in Attachment 4, *see also id.* Ex. 4.  At trial, plaintiff's separate exhibits shall be listed numerically, and defendant's separate exhibits shall be listed alphabetically.  The court encourages the parties to generate a joint exhibit list to the extent possible.  Joint Exhibits shall be identified by the prefix "JX" and listed numerically, *e.g.*, JX-1, JX-2.

All exhibits must be premarked.  The parties must prepare exhibit binders for use by the court at trial, with a side tab identifying each exhibit in accordance with the specifications above.

Each binder shall have an identification label on the front and spine.  The parties must exchange exhibits no later than twenty-eight days before trial.  Any objections to exhibits are due no later than fourteen days before trial.

    A.    The court will not admit exhibits other than those identified on the exhibit lists referenced above unless:

        1.    The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

        2. The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in Paragraph "B," below.

    B.    Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the court and opposing parties of the existence of such exhibits so that the court may consider their admissibility at trial. The exhibits will not be received unless the proffering party demonstrates:

        1.    The exhibits could not reasonably have been discovered earlier;

        2.    The court and the opposing parties were promptly informed of their existence;

        3.    The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party.  If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

All trial exhibits will be returned to the parties by the court clerk following trial.

<u>DISCOVERY DOCUMENTS</u>

Discovery documents shall be subject to the same rules described in the previous section for trial exhibits.  Plaintiff's list of discovery documents shall be those identified in Attachment 5, *see also* Joint Pretrial Statement Ex. 5.

Counsel must lodge the sealed original copy of any deposition transcript to be used at trial with the Clerk of the Court no later than fourteen days before trial.

1    FURTHER DISCOVERY OR MOTIONS

2        A. Motions *in Limine*

3        The court may issue further rulings on motions *in limine* on the first day of trial.  At the

4    final pretrial conference, the court informed the parties of the following tentative rulings:

5        (1) Plaintiff's motion *in limine* to exclude as irrelevant any evidence regarding the amount

6            of money she earned from sources other than ASCI between 2006 and 2012, ECF No.

7            101, is denied.

8        (2) Plaintiffs' motion *in limine* to limit expert testimony offered by Karen Moore and

9            Frank Bologna, ECF No. 102, is preliminarily denied.

10        (3) Plaintiff's motion *in limine* to exclude any expert testimony offered by John Bannon,

11            ECF No. 103, is granted as unopposed.

12        (4) A decision on plaintiff's motion *in limine* to prevent the defendants from introducing

13            any evidence that "they did not use Plaintiff's name on or in products, merchandise, or

14            goods, or for purposes of advertising or selling, or soliciting purchases of, products,

15            merchandise, goods or services" such that California Civil Code section 3344 does not

16            apply, ECF No. 104, is deferred pending further review of relevant jury instructions,

17            the parties' trial briefs, and argument on the morning of trial.

18        (5) Defendants' motion *in limine* to exclude any evidence that ACSI entered into any

19            contract with St. Paul or AMLIN, ECF No. 106, is denied.

20        (6) Defendants' motion *in limine* to exclude any evidence that they engaged in unfair

21            business practices, ECF No. 107, is denied.

22        (7) Defendants' motion *in limine* to exclude testimony of current and former ACSI's

23            employees and others about John Bannon's character, ECF No. 108, is denied.

24        Each ruling above is made without prejudice and is subject to proper renewal, in whole or

25    in part, during trial.  If a party wishes to contest a pretrial ruling, it must do so through a proper

26    motion or objection, or otherwise forfeit appeal on such grounds.  *See* Fed. R. Evid. 103(a);

27    *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 689 (9th Cir. 2001) ("Where a district

28    court makes a tentative *in limine* ruling excluding evidence, the exclusion of that evidence may

9

1  only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial."

2  (alteration, citation and quotation marks omitted)).

3       B. Discovery

4       Plaintiff seeks an order requiring the individual defendants to produce all documents that

5  evidence their net worth for the purposes of the jury's determining the amount of punitive

6  damages, if any, to be awarded.  In light of the subpoena plaintiff has served on Mr. Bannon to

7  produce all such documents at trial, the court declines to enter any order at this time.  Defendants

8  contend that all such documents have already been produced in light of the Protective Order

9  entered by the court on March 18, 2015.

10       C. Bifurcation

11       Defendants have filed a motion to bifurcate the trial into two phases for liability and

12  damages.  ECF No. 109.  "For convenience, to avoid prejudice, or to expedite and economize, the

13  court may order a separate trial of one or more separate issues . . . ."  Fed. R. Civ. P. 42(b).  The

14  district court's decision on a motion to bifurcate a trial is one of discretion.  *Hangarter v.*

15  *Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004).  "Absent some experience

16  demonstrating the worth of bifurcation, 'separation of issues for trial is not to be routinely

17  ordered.'"  *Hamm v. Am. Home Products Corp.*, 888 F. Supp. 1037, 1039 (E.D. Cal. 1995)

18  (quoting Fed. R. Civ. P. 42(b) advisory comm. notes to 1966 amendment).

19       Here, defendants argue bifurcation would avoid unnecessary testimony from two

20  accounting experts and other evidence related only to damages.  Mot. Bifurcate 4–6.  They also

21  argue the jury could be distracted or confused by evidence about damages.  *Id.*  This case is not

22  particularly complicated, and the trial is not expected to be unusually lengthy.  Any potential

23  prejudice due to juror confusion may be avoided by appropriate limiting instructions.  The motion

24  to bifurcate is denied.

25  AMENDMENTS/DISMISSALS

26       No amendments or dismissals are anticipated.

27

28

SETTLEMENT

The parties conducted a private mediation with JAMS in June 2013.  Since that time there have been no further mediations or substantive settlement discussions.  The parties are directed to attend a settlement conference with Magistrate Judge Kendall J. Newman on **July 1, 2015**, at 9:00 a.m. in Courtroom No. 25, 8th Floor.

The parties are directed to exchange non-confidential settlement conference statements seven (7) days prior to this settlement conference.  These statements shall simultaneously be delivered to the court using the following email address: kjnorders@caed.uscourts.gov.  Each party is reminded of the requirement that it be represented in person at the settlement conference by a person able to dispose of the case or fully authorized to settle the matter at the settlement conference on any terms.  *See* Local Rule 270.

The parties should communicate directly with Judge Newman to clarify his requirements regarding the attendance of insurer representatives, and to determine whether he can accommodate an earlier settlement date.

JOINT STATEMENT OF THE CASE

The parties shall file a joint statement of the case no later than the day of trial.

SEPARATE TRIAL OF ISSUES

Plaintiff does not believe that any issues in this case are suitable for bifurcation. Defendants contend, and believe it is appropriate, that the trial be bifurcated between the issues of liability and damages.  They have filed a motion for bifurcation.  ECF No. 109.

IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

Appointment of an Impartial Expert is not necessary in this case.  Plaintiff has two experts, a forensic CPA and a Claims Adjuster.  Defendants have one retained expert, a Vice President of an insurance company, and a non-retained expert, the CPA who prepared all of American Claims Services, Inc.'s financials.

ATTORNEYS' FEES

Plaintiff seeks attorneys' fees under California Civil Code Section 3344 if she prevails; defendants seek fees if they prevail.  The nature and extent of such fees will be determined by

1  post-trial motion.  Plaintiff's fees are billed on an hourly basis and plaintiff's counsel will

2  produce all legal invoices for a Lodestar analysis.  Defendants' fees are billed on an hourly basis

3  and defendants' counsel will produce all legal invoices for a Lodestar analysis.

4  ESTIMATED TIME OF TRIAL/TRIAL DATE

5          Jury trial is set for **July 27, 2015**, at 9:00 a.m. in Courtroom Three before the Honorable

6  Kimberly J. Mueller.  Trial is anticipated to last four to five days.  The parties are directed to

7  Judge Mueller's trial schedule outlined at the "important information" link located on her web

8  page on the court's website.

9  PROPOSED JURY VOIR DIRE AND PROPOSED JURY INSTRUCTIONS

10         The parties shall file any proposed jury voir dire seven days before trial.  Each party will

11  be limited to ten minutes of jury voir dire.

12         The court directs counsel to meet and confer in an attempt to generate a joint set of jury

13  instructions and verdicts.  The parties shall file any such joint set of instructions fourteen days

14  before trial, identified as "Jury Instructions and Verdicts Without Objection."  To the extent the

15  parties are unable to agree on all or some instructions and verdicts, their respective proposed

16  instructions are due fourteen days before trial.

17         Counsel shall e-mail a copy of all proposed jury instructions and verdicts, whether agreed

18  or disputed, as a word document to kjmorders@caed.uscourts.gov no later than fourteen days

19  before trial; all blanks in form instructions should be completed and all brackets removed.

20         Objections to proposed jury instructions must be filed seven days before trial; each

21  objection shall identify the challenged instruction and shall provide a concise explanation of the

22  basis for the objection along with citation of authority.   When applicable, the objecting party

23  shall submit an alternative proposed instruction on the issue or identify which of his or her own

24  proposed instructions covers the subject.

25  MISCELLANEOUS

26         Trial briefs are due seven days before trial.

27

28

12

OBJECTIONS TO PRETRIAL ORDER

Each party is granted fourteen days from the date of this order to file objections to the same.  If no objections are filed, the order will become final without further order of this court.

DATED:  June 5, 2015.

_____

UNITED STATES DISTRICT JUDGE

13

**Attachment 1 – Plaintiff's Witnesses**

1. <u>Carol Quigley</u>: Ms. Quigley will offer testimony regarding: her experience as a licensed, independent adjuster; her agreement to serve as ACSI's qualified manager for 2-3 months; the agreement to allow ACSI to use her name, likeness, signature, and license for a brief period of time; defendants' unauthorized use of her name, likeness, signature, and license beyond the agreed upon period of consent; and damages sustained by her.  She will further offer testimony regarding her opinion of, and John Bannon's reputation for, truth and veracity.

2. <u>Judy Blick, Esq.</u>: Ms. Blick will offer testimony regarding conversations with John Bannon regarding: the need for ACSI to obtain an organization adjuster's license in California; complaints made by John Bannon regarding the cost of doing business in California; ACSI's unauthorized use of her law firm's address as its principal place of business; instructions received from USF regarding retention of plaintiff as ACSI's qualified manager, and opinion testimony regarding plaintiff's competence as an adjuster and her reputation in the insurance industry.  She will further offer testimony regarding her opinion of, and John Bannon's reputation for, truth and veracity.

3. <u>Pat Bruce</u>: Ms. Bruce will offer testimony regarding conversations with John Bannon regarding: ACSI's organization adjuster's license in California; ACSI's unauthorized use of her name as its resident agent to accept service of process; ACSI's unauthorized use of her home address as its principal place of business; and, and opinion testimony regarding plaintiff's competence as an adjuster and her reputation in the insurance industry.  She will further offer testimony regarding her opinion of, and John Bannon's reputation for, truth and veracity.

4. <u>Alan Cassell</u>: Mr. Cassell will offer testimony regarding his experience working for ACSI in 2006/2007 and conversations with John Bannon regarding the licensing requirements imposed by the Department of Insurance.  He will testify regarding statements made by Mr. Bannon including: that ASCI had plaintiff's permission to use her name and license for a few months; that Bannon was studying to take the license examination test in May 2006; and that after May 2006 Cassell was advised by Bannon that the licensing requirements had been taken care of

and that Mr. Cassell should not worry about the same.  He will further offer testimony regarding his opinion of, and John Bannon's reputation for, truth and veracity.

5. <u>John Bannon, Esq.</u>: Mr. Bannon will offer testimony regarding: the nature of ACSI's claims business; the agreement with plaintiff to serve as ACSI's qualified manager for 2-3 months; the agreement to allow ACSI to use plaintiff's name, likeness, signature, and license for a brief period of time; defendants' continuous use of plaintiff's name, likeness, signature, and license beyond the agreed upon period of consent; the gross revenue realized by ACSI from its California claims operation between 2005 to January 2013; the gross revenue realized by Mr. Bannon from ACSI's claims operation between 2005 to January 2013; ACSI's designation of qualified managers; ACSI's designation of resident agents to accept service of process; ACSI's designation of its principal place of business in California; the purchase agreement and terms of compensation between York Risk Services Group and ACSI; and, the benefits realized by ACSI from its use of plaintiff's name, likeness, signature, and license.

6. <u>Scot Adams</u>: Mr. Adams is an attorney and licensed adjuster in California and will offer expert testimony regarding: the duties and qualifications of qualified managers; licensing requirements for insurance adjusting companies; compensation typically received by an independent adjuster who serves as a qualified manager; the revenue realized by ACSI regarding its use of plaintiff's name, signature, likeness, and adjuster's license; and, the monetary losses sustained by plaintiff.

7. <u>Steven Schroeder</u>: Mr. Schroeder is a certified public accountant and will offer expert testimony regarding: the gross revenue and net profit realized by ACSI from its California claims operation between 2005 to January 2013; the gross revenue and net profit realized by Mr. Bannon from ACSI's claims operation between 2005 to January 2013; deductible expenses claimed by ACSI for the calendar years of 2005 through 2012; ACSI's financial statements, general ledgers, and tax returns between 2005 and January2013; and, the purchase agreement and terms of compensation between York Risk Services Group and ACSI.

8. <u>Matthew Jefferies</u>: Mr. Jeffries will testify regarding the USF account handled by ASCI, discovery of the fact that ASCI was operating without an adjuster's license, and his

1  recommendation that ASCI utilize the services of plaintiff as qualified manager in order for ASCI

2  to maintain the USF account.

3       9. <u>Darrell Woo</u>: Mr. Woo will authenticate records and documents of the

4  Department of Insurance.  He will provide testimony regarding the Department's regulations and

5  the requirement that a non-resident adjuster organization designate a qualified manager in order to

6  transact business in California.

7       10. <u>Keith Kuznich</u>: Mr. Kuznich is a Deputy Director for the Department of

8  Insurance.  He will provide testimony regarding the Department's regulations and the requirement

9  that a non-resident adjuster organization designate a qualified manager in order to transact

10  business in California.  He will also provide testimony regarding various legal requirements for

11  claims adjusting entities including: principal place of business; posting of license; license

12  renewals; and the requirements that a non-resident adjuster be actively supervised by a properly

13  licensed, qualified manager.

14       11. <u>Vicki Lyman</u>: Ms. Lyman is a Deputy Director for the Department of

15  Insurance.  She will provide testimony regarding the Department's regulations and the

16  requirement that a non-resident adjuster organization designate a qualified manager in order to

17  transact business in California.  She will also provide testimony regarding various legal

18  requirements for claims adjusting entities including: principal place of business; posting of

19  license; license renewals; and the requirements that a non-resident adjuster be actively supervised

20  by a properly licensed, qualified manager.

21       12. <u>Lewis Schuster</u>: Mr. Schuster will offer testimony regarding his experience

22  working for ACSI in the spring of 2006 and conversations with John Bannon wherein Mr.

23  Bannon stated that he would be taking the examination to obtain an adjuster's license in May

24  2006.  He will further offer testimony regarding his opinion of, and John Bannon's reputation for,

25  truth and veracity.

26       13. <u>Adam Payne</u>: Mr. Payne is a claims manager for Amlin and will testify

27  regarding the Amlin account handled by ASCI, the TPA agreement with ACSI, and the

28  contractual requirement that ACSI have all requisite licenses required by the State of California,

1    and that the commercial relationship with ACSI was predicated on its having all required licenses

2    to conduct claims adjusting work in California.

3              14. <u>Adrienne D. Cohen, Esq.</u>: Ms. Cohen may be called to testify regarding

4    ACSI's use of plaintiff as an independent adjuster and advising plaintiff that except for conflicts,

5    all mediation and settlement conference appearances would first be given to Pat Bruce.

17

**Attachment 2 – Defendants' Witnesses**

1. <u>John Bannon</u>: Mr. Bannon has knowledge of the facts of the alleged oral agreement between Defendant American Claims Services, Inc. and Plaintiff, the allegations alleged by Plaintiff in the First Amended Complaint, as well as Defendants' claims and defenses.

2. <u>Judith A. Blick, Esq.</u>: Ms. Blick has knowledge of the facts of alleged oral agreement between Defendant American Claims Services, Inc. and Plaintiff, and the creation of Defendant American Claims Services, Inc.'s claims operations in California.

3. <u>Bill T. Johnson</u>: Mr. Johnson has knowledge of the facts alleged by Plaintiff in the First Amended Complaint, as well as Defendants' claims and defenses.

4. <u>Susan B. Johnson</u>: Mrs. Johnson has knowledge of the facts alleged by Plaintiff in the First Amended Complaint, as well as Defendants' claims and defenses.

5. <u>Emilia Y. Quintero</u>: Ms. Quintero has knowledge of the facts of the alleged oral agreement between Plaintiff and Defendants, the creation of Defendant American Claims Services, Inc.'s claims operations in California, and Defendants' claims and defenses.

6. <u>Plaintiff Carol Quigley, aka Carol Diane Euwema</u>: Plaintiff has knowledge of the facts and allegations at issue in this matter, as she has knowledge of the alleged oral agreement, her claims for damages, and issues pertaining to her California Insurance Adjustor's license.

7. <u>David Stern</u>, RPA: Mr. Stern's areas of expertise include the requirements of the California Department of Insurance, the duties and responsibilities of qualified managers, and the administration of claims.

8. <u>Karen Moore</u>: Ms. Moore is expected to testify with respect to the amount of expenses incurred by ACSI and ACSI's resulting net revenue for work performed in California. In addition, Ms. Moore will testify as the amount of net revenue generated by Plaintiff's work. Ms. Moore is expected to testify to the following: that ACSI's gross revenue for California operations in 2007 was $4,557,626.35, ACSI's gross revenue for California operations in 2008 was $4,486,394.16, ACSI's gross revenue for California operations in 2009 was $4,401,682.43 excluding non-billable items, ACSI's gross revenue for California operations in 2010 was

1   $4,789,382.23 excluding non-billable items, ACSI's gross revenue for California operations in

2   2011 was $4,666,393.82 excluding non-billable items, ACSI's gross revenue for California

3   operations in 2012 was $4,165,638.67 excluding non-billable items.  Ms. Moore will rely on

4   ACSI's financial documents which have been produced during the course of discovery in this

5   matter.

6           9. <u>Frank Bologna</u>: Mr. Bologna is expected to testify with respect to ACSI's

7   claims management business.  He is expected to offer his opinion that the listing of Plaintiff's

8   name and license with the California Department of Insurance was to satisfy an administrative

9   purpose and her name and license were not used for any commercial purpose.  He will also testify

10  as to the nature of the adjusting operations and marketing efforts used by ACSI.  He will rely on

11  his experience in the claims industry and as an employee of ACSI.

**Attachment 3 – Plaintiff's Exhibits**

| ID | Description |
|---|---|
| 1 | Steadfast Insurance Renewal Application 2005 |
| 2 | St. Paul Claims Service Agreement |
| 3 | ACSI Payments October 2005-December 2005 |
| 4 | Email from John Bannon to Bruce Nesbitt with surety bond |
| 5 | St. Paul Travelers Bond Express Surety Application |
| 6 | Personal Identification Information for Margaret Ann Bannon |
| 7 | Personal Identification Information for Susan Bonin Johnson |
| 8 | Correspondence from John Bannon to Bruce Nesbitt |
| 9 | Form 31A-14 (State of California Bond of Insurance Adjuster) for ACSI |
| 10 | Instructions for Completing Adjuster Organization Application |
| 11 | Correspondence from John Bannon to CA Dept. of Insurance |
| 12 | Steadfast Insurance Renewal Application 2006 |
| 13 | Correspondence from Craig Jordan (CA Dept. of Insurance) to ACSI |
| 14 | Correspondence from John Bannon to Carol Quigley |
| 15 | Correspondence from John Bannon to CA Dept. of Insurance |
| 16 | Certificate from State of CA Dept. of Insurance ACSI Lic. # 2F05624 exp. 5/31/06 |
| 17 | Application for Specified Professions Professional Liability Insurance and Service and Technical Professional Liability Insurance re: ACSI |
| 18 | Steadfast Insurance Renewal Application 2007 |
| 19 | Email from Frank Bologna to Pat Bruce |
| 20 | Correspondence from John Bannon to Bruce Nesbitt/Sue Johnson |
| 21 | Email from Frank Bologna to John Bannon/Susan Johnson, re: CA Labor Regulations |
| 22 | Email from Frank Bologna to Pat Bruce |
| 23 | Email from Frank Bologna to Eric and staff |
| 24 | Steadfast Insurance Renewal Application 2008 |
| 25 | Application to Renew Business Entity Insurance Adjuster (AJ) or Public Insurance Adjuster (PJ) License |
| 26 | CA Dept. of Insurance Independent Adjuster Course Guidelines |
| 27 | ACSI General Journal 1/1/2009-12/31/2009 |
| 28 | Steadfast Insurance Renewal Application 2009 |
| 29 | Email from John Bannon to Pat Bruce |
| 30 | Email from Carol Quigley to Pat Bruce |
| 31 | Steadfast Insurance Renewal Application 2010 |
| 32 | CA Secretary of State Statement of Information for ACSI |
| 33 | App to Renew Organization Insurance Adjuster or Public Adjuster License |
| 34 | Steadfast Insurance Renewal Application 2011 |
| 35 | Email from Susan Johnson to Pat Bruce |
| 36 | Steadfast Insurance Renewal Application 2012 |
| 37 | Correspondence from John Bannon to CA Dept. of Insurance |
| 38 | Email from Pat Bruce to Bruce Baehl |

| ID | Description |
|----|-------------|
| 39 | Email from John Bannon to Pat Bruce |
| 40 | Correspondence from Carol Quigley to John Bannon |
| 41 | Handwritten Note by Carol Quigley regarding conversation with John Bannon |
| 42 | Email from John Bannon to Carol Quigley |
| 43 | Email from Pat Bruce from John Bannon |
| 44 | Carol Quigley Individual License Details from CA Dept. of Insurance |
| 45 | License examination "Pass" letter from California Dept. of Insurance, to John Bannon |
| 46 | Correspondence from John Bannon to CA Dept. of Insurance |
| 47 | Steadfast Insurance Renewal Application 2013 |
| 48 | CA Dept. of Insurance Personal Identification Information form re: John Bannon |
| 49 | Admiral Insurance Company Commercial Lines Policy 4/10/13-4/10/14 |
| 50 | Admiral Technology E&O Application |
| 51 | Asset Purchase Agreement between ACSI and York Risk Services Group, Inc., et al. |
| 52 | Declaration of Judy Blick 11-8-13 |
| 53 | Defendants' Answer to Plaintiff's Second Amended Complaint |
| 54 | CA Dept. of Insurance's Response to SDT Requests No. 1, 2, 5, 6 and 8 |
| 55 | Certificate from State of CA Dept. of Insurance ACSI Lic. # 2F05624 exp. 5/31/14 |
| 56 | Agency License Details, re: ACSI with bond info |
| 57 | License Status Name Search Results & Agency License Details, re: ACSI |
| 58 | John Bannon's Name Change Documents |
| 59 | Correspondence from Sue Johnson to John Bannon/Bill Johnson |
| 60 | Correspondence from Sue Johnson to Bruce Nesbitt |
| 61 | Correspondence from Bruce Nesbitt to Susan Phillips |
| 62 | Email from Linda Givens to CRC Insurance re: add named insured Johnson Bannon, Inc. |
| 63 | Email from Bruce Nesbitt to CRC Insurance, re: add named insured Johnson Bannon, Inc. |
| 64 | Correspondence from Bruce Nesbitt to Linda Givens |
| 65 | Declaration of John Bannon in Support of Motion for Summary Judgment |
| 66 | Correspondence from Jennifer Skerrit (Travelers) to Eustis Insurance |
| 67 | Surety Bond (letter from Travelers to Eustis Insurance) |
| 68 | Order on Motion for Partial Summary Judgment |
| 69 | Quigley's Expert report of Steven Schroeder dated 2/19/15 |
| 70 | Quigley's Expert report of Scott Adams dated 2/19/15 |
| 71 | Defendants' expert report of West Coast Casualty Service, Inc. dated 2/26/15 |
| 72 | Order After Hearing re: Defendants' motion for protective order |
| 73 | CA Insurance Code Section 14029, Operation of Business by Licensee or Manager |
| 74 | CA Insurance Code §14020, Necessity of License |
| 75 | CA Insurance Code §14033, Posting of License |
| 76 | CA Insurance Code §14043, Filing Info about Principal Place of Business |
| 77 | Agreement for the Provision of Claims Handling Services/Third-Party Administrator Agreement |
| 78 | ACSI's California tax returns 2007 |
| 79 | ACSI's Federal tax returns 2007 |
| 80 | ACSI's California tax returns 2008 |

| ID | Description |
|----|-------------|
| 81 | ACSI's Federal tax returns 2008 |
| 82 | ACSI's California tax returns 2009 |
| 83 | ACSI's Federal tax returns 2009 |
| 84 | ACSI's California tax returns 2010 |
| 85 | ACSI's Federal tax returns 2010 |
| 86 | ACSI's California tax returns 2011 |
| 87 | ACSI's Federal tax returns 2011 |
| 88 | ACSI's California tax returns 2012 |
| 89 | ACSI's Federal tax returns 2012 |
| 90 | ACSI's California tax returns 2013 |
| 91 | ACSI's Federal tax returns 2013 |
| 92 | ACSI's Operating Account statements Jan. 2013 |
| 93 | ACSI's Operating Account statements Feb. 2013 |
| 94 | ACSI's Operating Account statements Mar. 2013 |
| 95 | ACSI's Operating Account statements Apr. 2013 |
| 96 | ACSI's Operating Account statements May 2013 |
| 97 | ACSI's Operating Account statements Jun. 2013 |
| 98 | ACSI's Operating Account statements Jul. 2013 |
| 99 | ACSI's Operating Account statements Aug. 2013 |
| 100 | ACSI's Operating Account statements Sep. 2013 |
| 101 | ACSI's Operating Account statements Oct. 2013 |
| 102 | ACSI's Operating Account statements Nov. 2013 |
| 103 | ACSI's Operating Account statements Dec. 2013 |
| 104 | ACSI's Operating Account statements Jan. 2014 |
| 105 | ACSI's Operating Account statements Feb. 2014 |
| 106 | ACSI's Operating Account statements Mar. 2014 |
| 107 | ACSI's Operating Account statements Apr. 2014 |
| 108 | ACSI's Operating Account statements May 2014 |
| 109 | ACSI's Operating Account statements Jun. 2014 |
| 110 | ACSI's Operating Account statements Jul. 2014 |
| 111 | ACSI's Operating Account statements Aug. 2014 |
| 112 | ACSI's Operating Account statements Sep. 2014 |
| 113 | ACSI's Operating Account statements Oct. 2014 |
| 114 | ACSI's Operating Account statements Nov. 2014 |
| 115 | ACSI's Operating Account statements Dec. 2014 |
| 116 | ACSI's Operating Account statements Jan. 2015 |
| 117 | ACSI's Operating Account statements Feb. 2015 |
| 118 | John Bannon's UBS Account Statement Jan. 2013 |
| 119 | John Bannon's UBS Account Statement Feb. 2013 |
| 120 | John Bannon's UBS Account Statement Mar. 2013 |
| 121 | John Bannon's UBS Account Statement Apr. 2013 |
| 122 | John Bannon's UBS Account Statement May 2013 |
| 123 | John Bannon's UBS Account Statement Jun. 2013 |

| ID | Description |
|---|---|
| 124 | John Bannon's UBS Account Statement Jul. 2013 |
| 125 | John Bannon's UBS Account Statement Aug. 2013 |
| 126 | John Bannon's UBS Account Statement Sep. 2013 |
| 127 | John Bannon's UBS Account Statement Oct. 2013 |
| 128 | John Bannon's UBS Account Statement Nov. 2013 |
| 129 | John Bannon's UBS Account Statement Dec. 2013 |
| 130 | John Bannon's UBS Account Statement Jan. 2014 |
| 131 | John Bannon's UBS Account Statement Feb. 2014 |
| 132 | John Bannon's UBS Account Statement Mar. 2014 |
| 133 | John Bannon's UBS Account Statement Apr. 2014 |
| 134 | John Bannon's UBS Account Statement May 2014 |
| 135 | John Bannon's UBS Account Statement Jun. 2014 |
| 136 | John Bannon's UBS Account Statement Jul. 2014 |
| 137 | John Bannon's UBS Account Statement Aug. 2014 |
| 138 | John Bannon's UBS Account Statement Sep. 2014 |
| 139 | John Bannon's UBS Account Statement Oct. 2014 |
| 140 | John Bannon's UBS Account Statement Nov. 2014 |
| 141 | John Bannon's UBS Account Statement Dec. 2014 |
| 142 | John Bannon's UBS Account Statement Jan. 2015 |
| 143 | John Bannon's UBS Account Statement Feb. 2015 |
| 144 | Summary of ACSI's Answers to Interrogatories #1 & 4 Propounded by Quigley |
| 145 | Quigley's Interrogatories to ACSI, Set 1 |
| 146 | ACSI's Supplemental Answers to Plaintiff's Interrogatories, Set 1 |
| 147 | Quigley's Interrogatories to ACSI, Set 4 |
| 148 | ACSI's Supplemental Answers to Plaintiff's Interrogatories, Set 4 |
| 149 | Quigley's Requests for Production of Documents to ACSI, Set 1 |
| 150 | ACSI, Bannon, Johnson (Bill T. & Susan)'s Response to Plaintiff's Requests for Production of Documents, Set 1 |
| 151 | ACSI's Supplemental Responses to Plaintiff's Requests for Production of Documents, Set 1, Request #8 |
| 152 | Quigley's Requests for Production of Documents to ACSI, Set 3 |
| 153 | ACSI's Responses to Plaintiff's Requests for Production of Documents, Set 3 |
| 154 | Quigley's Requests for Production of Documents to ACSI, Set 4 |
| 155 | ACSI's Responses to Plaintiff's Requests for Production of Documents, Set 4 |
| 156 | Quigley's Requests for Production of Documents to ACSI, Set 5 |
| 157 | ACSI's Responses to Plaintiff's Requests for Production of Documents, Set 5 |
| 158 | Quigley's Requests for Production of Documents to ACSI, Set 6 |
| 159 | ACSI's Responses to Plaintiff's Requests for Production of Documents, Set 6 |
| 160 | Quigley's Requests for Production of Documents to ACSI, Set 7 |
| 161 | Quigley's Requests for Production of Documents to ACSI, Set 7 |
| 162 | ACSI's Response to Plaintiff's Requests for Production of Documents, Set 7 |
| 163 | Quigley's Requests for Production of Documents to ACSI, Set 8 |
| 164 | ACSI's Supplemental Responses to Plaintiff's Requests for Production, Set 8 |

| ID | Description |
|----|-------------|
| 165 | Quigley's Requests for Admissions to ACSI, Set 1 |
| 166 | ACSI's Response to Plaintiff's Requests for Admissions, Set 1 |
| 167 | Quigley's Requests for Admissions to ACSI, Set 2 |
| 168 | ACSI's Response to Plaintiff's Requests for Admissions, Set 2 |
| 169 | Quigley's Requests for Admissions to ACSI, Set 3 |
| 170 | ACSI's Response to Plaintiff's Requests for Admissions, Set 3 |
| 171 | Quigley's Interrogatories to John Bannon, Set 2 |
| 172 | John Bannon's Answers to Plaintiff's Interrogatories, Set 2 |
| 173 | Quigley's Interrogatories to John Bannon, Set 3 |
| 174 | John Bannon's Answers to Plaintiff's Interrogatories, Set 3 |
| 175 | Quigley's Interrogatories to John Bannon, Set 4 |
| 176 | John Bannon's Answers to Plaintiff's Interrogatories, Set 4 |
| 177 | Quigley's Requests for Production of Documents to John Bannon, Set 1 |
| 178 | John Bannon's Responses to Plaintiff's Requests for Production of Documents, Set 1 |
| 179 | Quigley's Requests for Production of Documents to John Bannon, Set 2 |
| 180 | John Bannon's Responses to Plaintiff's Requests for Production of Documents, Set 2 |
| 181 | Quigley's Requests for Production of Documents to John Bannon, Set 3 |
| 182 | John Bannon's Responses to Plaintiff's Requests for Production of Documents, Set 3 |
| 183 | Quigley's Requests for Admissions to John Bannon, Set 1 |
| 184 | John Bannon's Responses to Plaintiff's Requests for Admissions, Set 1 |
| 185 | Quigley's Requests for Admissions to John Bannon, Set 2 |
| 186 | John Bannon's Responses to Plaintiff's Requests for Admissions, Set 2 |
| 187 | Quigley's Requests for Admissions to John Bannon, Set 3 |
| 188 | John Bannon's Responses to Plaintiff's Requests for Admissions, Set 3 |
| 189 | Videotape of John Bannon deposition 6/30/14 |
| 190 | Videotape of John Bannon deposition 3/31/15 |

**Attachment 4: Defendants' Exhibits**

| ID | Description |
|----|-------------|
| A | License issued by California Department of Insurance to American Claims Services, Inc. in 2008 |
| B | American Claims Services, Inc.'s 2010 Application to Renew its California Insurance Adjusters License |
| C | American Claims Services, Inc.'s 2012 Application to Renew its California Insurance Adjusters License |
| D | E-mail correspondence from John Bannon to Carol Euwema dated January 22, 2013 |
| E | Letter from California Department of Insurance to John Bannon dated May 8, 2013 |
| F | California Department of Insurance Form 31A-9 for John Bannon dated January 27, 2006 |
| G | California Department of Insurance Form042A Application for Adjuster Organization License dated January 31, 2006 |
| H | Letter from California Department of Insurance to American Claims Services, Inc. dated February 15, 2006 |
| I | Letter from John Bannon to the California Department of Insurance dated February 15, 2006 |
| J | California Department of Insurance Form 31A-9 for Carol Euwema dated March 3, 2006 |
| K | American Claims, Inc.'s Ledger of California related Expenses for 2007-2012 |
| L | American Claims, Inc.'s Gross Revenue for California Operations FY2007 |
| M | American Claims, Inc.'s Gross Revenue for California Operations FY2008 |
| N | American Claims, Inc.'s Gross Revenue for California Operations FY2009 |
| O | American Claims, Inc.'s Gross Revenue for California Operations FY2010 |
| P | American Claims, Inc.'s Gross Revenue for California Operations FY2011 |
| Q | American Claims, Inc.'s Gross Revenue for California Operations FY2011 |
| R | American Claims, Inc.'s 2007 Tax Return |
| S | American Claims, Inc.'s 2008 Tax Return |
| T | American Claims, Inc.'s 2009 Tax Return |
| U | American Claims, Inc.'s 2010 Tax Return |
| V | American Claims, Inc.'s 2011 Tax Return |
| W | American Claims, Inc.'s 2012 Tax Return |
| X | American Claims, Inc.'s 2009 General Journals |
| Y | American Claims, Inc.'s 2010 General Journals |
| Z | American Claims, Inc.'s 2011 General Journals |
| AA | American Claims, Inc.'s 2012 General Journals |
| BB | American Claims, Inc.'s 2007 Purchase Journals |
| CC | American Claims, Inc.'s 2008 Purchase Journals |
| DD | American Claims, Inc.'s 2009 Purchase Journals |
| EE | American Claims, Inc.'s 2010 Purchase Journals |
| FF | American Claims, Inc.'s 2011 Purchase Journals |
| GG | American Claims, Inc.'s 2012 Purchase Journals |
| HH | American Claims, Inc.'s Capital One Bank Account No. 8889 Statements from 2008 through 2012 |
| II | American Claims, Inc.'s Capital One Bank Account No. 8889 Statements from 2013 |

| ID | Description |
|----|-------------|
| JJ | American Claims, Inc.'s Capital One Bank Account No. 8889 Statements from 2014 |
| KK | American Claims, Inc.'s Capital One Bank Account No. 8889 Statements From 2015 |
| LL | Deposition transcript of Carol Quigley |
| MM | Carol Quigley's Income Ledgers |
| NN | Deposition transcript of John Bannon |
| OO | Deposition transcript of Judy Blick |
| PP | Deposition transcript of Patricia Bruce |

**Attachment 5: Plaintiff's Discovery Documents**

| No. | Description |
| --- | --- |
| 1 | Quigley's Interrogatories to ACSI, Set 1 |
| 2 | ACSI's Supplemental Answers to Plaintiff's Interrogatories, Set 1 |
| 3 | Quigley's Interrogatories to ACSI, Set 4 |
| 4 | ACSI's Supplemental Answers to Plaintiff's Interrogatories, Set 4 |
| 5 | Quigley's Requests for Production of Documents to ACSI, Set 1 |
| 6 | ACSI, Bannon, Johnson (Bill T. & Susan)'s Response to Plaintiff's Requests for Production of Documents, Set 1 |
| 7 | ACSI's Supplemental Responses to Plaintiff's Requests for Production of Documents, Set 1, Request #8 |
| 8 | Quigley's Requests for Production of Documents to ACSI, Set 3 |
| 9 | ACSI's Responses to Plaintiff's Requests for Production of Documents, Set 3 |
| 10 | Quigley's Requests for Production of Documents to ACSI, Set 4 |
| 12 | ACSI's Responses to Plaintiff's Requests for Production of Documents, Set 4 |
| 13 | Quigley's Requests for Production of Documents to ACSI, Set 5 |
| 14 | ACSI's Responses to Plaintiff's Requests for Production of Documents, Set 5 |
| 15 | Quigley's Requests for Production of Documents to ACSI, Set 6 |
| 16 | ACSI's Responses to Plaintiff's Requests for Production of Documents, Set 6 |
| 17 | Quigley's Requests for Production of Documents to ACSI, Set 7 |
| 18 | Quigley's Requests for Production of Documents to ACSI, Set 7 |
| 19 | ACSI's Response to Plaintiff's Requests for Production of Documents, Set 7 |
| 20 | Quigley's Requests for Production of Documents to ACSI, Set 8 |
| 21 | ACSI's Supplemental Responses to Plaintiff's Requests for Production, Set 8 |
| 22 | Quigley's Requests for Admissions to ACSI, Set 1 |
| 23 | ACSI's Response to Plaintiff's Requests for Admissions, Set 1 |
| 24 | Quigley's Requests for Admissions to ACSI, Set 2 |
| 25 | ACSI's Response to Plaintiff's Requests for Admissions, Set 2 |
| 26 | Quigley's Requests for Admissions to ACSI, Set 3 |
| 27 | ACSI's Response to Plaintiff's Requests for Admissions, Set 3 |
| 28 | Quigley's Interrogatories to John Bannon, Set 2 |
| 29 | John Bannon's Answers to Plaintiff's Interrogatories, Set 2 |
| 30 | Quigley's Interrogatories to John Bannon, Set 3 |
| 31 | John Bannon's Answers to Plaintiff's Interrogatories, Set 3 |
| 32 | Quigley's Interrogatories to John Bannon, Set 4 |
| 33 | John Bannon's Answers to Plaintiff's Interrogatories, Set 4 |
| 34 | Quigley's Requests for Production of Documents to John Bannon, Set 1 |
| 35 | John Bannon's Responses to Plaintiff's Requests for Production of Documents, Set 1 |
| 36 | Quigley's Requests for Production of Documents to John Bannon, Set 2 |
| 37 | John Bannon's Responses to Plaintiff's Requests for Production of Documents, Set 2 |
| 38 | Quigley's Requests for Production of Documents to John Bannon, Set 3 |
| 39 | John Bannon's Responses to Plaintiff's Requests for Production of Documents, Set 3 |
| 40 | Quigley's Requests for Admissions to John Bannon, Set 1 |
| 41 | John Bannon's Responses to Plaintiff's Requests for Admissions, Set 1 |
| 42 | Quigley's Requests for Admissions to John Bannon, Set 2 |
| 43 | John Bannon's Responses to Plaintiff's Requests for Admissions, Set 2 |

| No. | Description |
|-----|-------------|
| 44  | Quigley's Requests for Admissions to John Bannon, Set 3 |
| 45  | John Bannon's Responses to Plaintiff's Requests for Admissions, Set 3 |
| 46  | Videotape of John Bannon deposition 6/30/14 |
| 47  | Videotape of John Bannon deposition 3/31/15 |